## Eberle L. Wilson, a minor, by Wilma W. Wilson v. The Board of Education of the City of Chicago.

### Gen. No. 13,501.

1. BOARD OF EDUCATION—*when rule of discipline reasonable and within power of adoption.* A board of education has power to adopt a rule excluding all pupils who are members of secret societies from participating in athletic contests, etc., and such a rule is reasonable.

2. BOARD OF EDUCATION—*when courts will not set aside rule of discipline adopted by.* With respect to a rule adopted in the interest of discipline, courts will not interpose their judgment against that of a Board of Education unless it is clearly shown that fraud or corruption controlled such Board in making, or that oppression or gross injustice naturally follows from the enforcement of such rule.

Bill for injunction. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed November 11, 1907.

JOHN C. WILSON, for appellant.

JAMES MAHER and ANGUS ROY SHANNON, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Appellee on June 19, 1904, adopted a rule or regulation in the following words:

"The Superintendent of Schools respectfully reports that, in accordance with the action of the Board of Education taken at its last meeting, he has considered the matter of 'secret' societies in the high schools, and respectfully recommends that the principals and teachers of the High School be instructed to deny to any 'secret' societies, which may exist in their schools, all public recognition, including the privilege of meeting in the school buildings; that such organization be forbidden to use the school's name; that no student who is known to be a member of a fraternity or so-

ciety, or other so-called 'secret' societies, be permitted to represent the school in any literary or athletic contest, or in any other public capacity, and that the attention of parents of the pupils who are to attend the public high school be called to the fact that the Board of Education, the Superintendent and teachers of the high schools, unanimously condemn all such 'secret' societies.''

A few days prior to November 28, 1906, notice was sent to all of the public schools that the rule would be strictly enforced. Thereupon appellant, a pupil in the Hyde Park High School, under the jurisdiction of the Board, filed his bill to enjoin the enforcement of the rule, he being a member of a secret fraternity organization known as the ''Phi Sigma Fraternity,'' and therefore, if the rule is enforceable, within its disciplinary provision. The bill prayed that the rule be judged null and void and the board permanently enjoined from either enforcing or attempting to enforce it. The bill averred, *inter alia,* that the rule so promulgated was the exercise of arbitrary power by the board and violative of the natural rights of appellant and an unlawful discrimination against him.

To this bill the board filed a general demurrer, which the learned chancellor of the Superior Court, upon hearing, sustained, and dismissed the bill for want of equity. From this finding and judgment appellant prosecutes this appeal, and assigns errors which call for our review of appellant's contention that the chancellor's decision and decree are contrary to law.

Two points only are necessarily involved in the review here sought to determine whether or not the chancellor's decree is in accord with the law: First, had the Board of Education vested in it by law authority to make such a rule? Second, is the rule a reasonable one?

In the first place, from whence is the authority derived for the establishment and continuance of a public school system? The answer is, the organic law of the state demands the establishment and maintenance

of the public schools at the public expense.    The Constitution of 1870 by article 8, section 1, provides that "The General Assembly shall provide a thorough and efficient system of free schools whereby all children of this state may receive a good common school education."    A like provision has formed a part of every constitution adopted by the State of Illinois since its admission to statehood in the year 1818.

The legislature of the state, conforming to this command of the Constitution, enacted laws establishing a public school system, and conferred upon the several bodies controlling them powers of governance and maintenance.    The public schools of the city of Chicago have been entrusted to a board of education, and powers to govern and regulate vested in it by appropriate legislation.    Among numerous statutory provisions in this regard is the following:    Section 22, article 6, of chapter 122, entitled "Schools," viz: "And generally to have and possess all the rights, powers and authority required for the proper management of schools, with power to enact such ordinances as may be deemed necessary and expedient for such purpose, and to expel any pupil who may be guilty of gross disobedience or misconduct."    Section 23 of the same article provides that it shall be the duty of such Board of Education, among other things, "to establish all such by-laws, rules and regulations for the government and for the establishment and maintenance of a proper and uniform system of discipline in the several schools as may, in their opinion, be necessary."

These grants of power by the legislature to the board would seem to be plenary and all sufficient to enable it to make all laws, rules and regulations necessary for the establishment, government and maintenance of public schools in the city of Chicago, including rules for the discipline of pupils.

It is contended that the reasonableness or unreasonableness of the rule in question is one of law for the

court to determine. The argument proceeds upon the theory that the rule is unreasonable as discriminating against one class of pupils in favor of another, in excluding one, so-called, class from participation in any school literary or athletic contest, or representing such school in any other public capacity. That this exclusion is in the nature of punishment to the pupils for fraternizing with a secret society, and that such punishment is a deprivation of a natural right.

The assumption in the argument that the members of secret societies are in a different class from the rest of the pupils is self-refuting. As pupils in the public schools, they are on an equality with all the other pupils—neither above nor below—and entitled to no privileges or exemptions not applicable to all the pupils as a body. The position of appellant and the pupils, members of secret societies, that they are a class by themselves, different from that occupied by their fellow non-secret society member pupils, is one they arrogate to themselves, not recognized by law or the rules of the Board of Education. Their relation to the school board is that of pupils of the school, without any qualifying distinction. The regulation of the conduct of all the pupils is conserved by the rules. The penalties and punishments provided by the rules operate upon all pupils impartially. To hold that pupils belonging to a secret society were either ennobled or debased by membership therein, and therefore were in a separate and distinct class as school pupils, would be the recognition of a class distinction contrary to the fundamental spirit of our laws.

Neither does the rule curtail in any degree the liberty of the pupil in joining any secret society with or without the parental sanction; nor does it in any manner forbid any pupils attendance upon the meetings of such society, or taking part in any of its exercises. Full liberty in this, as in other respects, remains to the pupils. Nor can we construe the rule as in any manner controlling or regulating the action or author-

ity of the parents over their school children when away from the school houses and the direction of their teachers. The rule in no aspect of its operation could work an expulsion or dismissal from school of the secret society pupil.

The school contests, from which pupils, members of any secret society, are debarred, do not form a part of the school curriculum or of the general educational scheme. Who shall represent certain schools in any athletic or literary contest, must necessarily rest with the teachers under rules and regulations made by the board. A weak or physically deformed pupil must necessarily desist from an athletic competition; and by like lines of reasoning a pupil with a short and uncertain memory would not be eligible to entry in an oratorical or literary contest. So a standard of educational attainment might be exacted as a condition for entry into any school contest, and if it was equal in its application to all the pupils, it would be regarded in law as a reasonable rule.

The board and teachers stand *in loci parentes* to the pupils while attending school, and as a general proposition they are clothed with sufficient authority to determine what is and what is not for the best interests of the pupils entrusted to their care. Whenever such rules are not clearly so unreasonable as to be without the sanction of legal authority, they will be upheld by the courts. The presumption of law is in favor of the reasonableness of the rules of boards, like unto that of appellee's, and the burden of proving and maintaining that a rule is not reasonable rests on the party challenging it. People ex rel. v. Cregier, 138 Ill. 401.

There may be a contrariety of opinion as to whether secret societies in schools among pupils are beneficial or harmful to either the pupil or the cause of education. In such condition, who shall decide whether the pupils shall be encouraged or not in making affiliations with any of them? The courts or the board? It makes no difference which of them shall control so

far as affecting the ultimate conclusion is concerned, for the courts have been quite outspoken in their condemnation of such societies in schools as hurtful to the pupil and detrimental to his educational progress. Even were it otherwise, if the rule is reasonable and equal in its operation, the courts cannot interpose their judgment or opinion contrary or in opposition to that of the board, which, in the promulgation of such rules, acts judicially. McCormick v. Burt, 95 Ill. 263; School Trustees v. School Directors, 190 *ibid.* 390. And in no circumstances will the courts interpose their judgment against that of the board unless it is clearly shown that fraud or corruption controlled the board in making, or that oppression or gross injustice naturally follows the enforcement of such rule. It is furthermore apparent that none of the activities which it is claimed appellant and his fellow secret society pupils are excluded from participating in, are, nor is any one of them, such that will come within the purview of studies or exercises necessary to fulfill the constitutional command that the children of the state shall receive free "a good common school education."

The bill avers that appellant is a member of the secret society called *"Phi Sigma Fraternity"*; that such organization is not connected with the Hyde Park High School; that its meetings are held after school hours; that the fraternity is a large organization, having branches and chapters in various states. Thus it stands admitted that the "Phi Sigma Fraternity" has no place in the educational facilities afforded by the schools, is plainly alien, distinct and entirely apart from the purposes for which the public schools in Chicago were established and are maintained, and in no sense are such societies essential to the inculcation into the minds of the pupils that which is their constitutional right—"a good common school education."

In judging of the reasonableness of the rules complained of, we will ascertain what the courts have said in judging of similar rules. The leading case in

Illinois is People ex. rel. v. Wheaton College, 40 Ill. 187. In that case its charter gave Wheaton College power "to adopt and enforce such rules as may be deemed expedient for the government of the institution." Among its rules was one forbidding students to become members of secret societies, and the court say: "We perceive nothing unreasonable in the rule itself, since all persons familiar with college life know that the tendency of secret societies is to withdraw students from the control of the faculty, and to impair to some extent the discipline of the institution. Such may not always be their effect, but such is their general tendency. But whether the rule be judicious or not, it violates neither good morals nor the law of the land, and is therefore clearly within the power of the college authorities to make and enforce. * * * We have no more authority to interfere than we have to control the domestic discipline of a father of his family. * * * When it is said that a person has a legal *right* to do certain things, all that phrase means is that the law does not forbid these things to be done. It does not mean that the law guarantees the right to do them at all possible times and under all possible circumstances." The son of the relator, the college student in case *supra,* joined a temperance organization chartered by the state, called the "Good Templars," and was expelled from the college under the rule for infringing it in so doing, and the Supreme Court decided that while he had a right to join either the Good Templars of Wheaton College, either the Templars or the college had the right to make a rule expelling him for violation of its rules that were not "inconsistent with law or good morals." Subsequent decisions have in no way departed from or modified the rules laid down in the Wheaton College case, *supra.*

State ex rel. v. White, 82 Ind. 278, is as broad as the Illinois cases on this subject. It was there held that the trustees had the undoubted power to prohibit

any student from affiliating with a Greek letter fraternity so long as such student remains under the control of the state university, and "as to the propriety of such a simple inhibition and restriction, the trustees, aided by the experience of the faculty, ought and are presumed to be the better judges, and as to all such matters, within reasonable limitations, the powers of the trustees are plenary and complete." And the powers of appellee, the Board of Education, are just as plenary and complete and exempt from legal interference.

Wayland v. Board of School Directors, 86 Pac. Rep. 642, is on all fours with the case at bar, as much so as in the varied conditions of natural conflict a case can be. Its every reasoning is as pointedly applicable and as controlling of every material point raised in this case, as in the case in which the opinion was written. It involved a high school pupil and a Greek letter society, the joining of which violated a rule similar to the one before us. In that case, as in this, the complaining pupil was not denied any instruction afforded by class work or by the required curriculum of the school. The court found that "He is only denied certain other privileges, such as participation in athletics, literary, military, musical or class organizations." The School Board of Seattle passed the rule in dispute in the Wayland case *supra* after a careful inquiry as to the effect of such secret societies on students and their studies and upon the indisputable information obtained from educators of distinction who unanimously and unqualifiedly condemned the influence of such societies "as highly deleterious and injurious."

The Board of Education has full power in every particular to maintain and govern the public schools of Chicago. It is the controlling and guiding body, caring for its property, regulating the course of study, governing the teachers and providing generally for the educational welfare of the pupils. Incident to these powers is the necessary one—a power in this

instance conferred by the legislature—to enact all necessary rules for the government, establishment and maintenance of a proper and uniform system of discipline.   In the exercise of this power the rule in question was adopted, and in so adopting, as said in McCormick v. Burt, *supra,* "They act judicially in a matter involving discretion in relation to the duties of their office."   Where such discretion has been exercised in wisdom, and the rule or by-law is not unreasonable, the requirements of the law have been satisfied and courts will not interfere to disturb.   But for the power of the Board of Education to make and enforce reasonable disciplinary rules, the orderly control of the conduct of the pupils would be impossible.

The rule complained of is a law binding both the pupil and the Board of Education, and the decree of the Superior Court dismissing the bill of appellant for want of equity, etc., as obnoxious to the general demurrer interposed to it, is affirmed.

*Affirmed.*