[No. 6227. Decided August 15, 1906.]

GEORGE WAYLAND, *by his Guardian ad Litem, Appellant,* v. E. C. HUGHES *et al., as Board of School Directors etc., Respondents.*[1]

SCHOOLS AND SCHOOL DISTRICTS—CONDUCT AND DISCIPLINE—REGULATIONS—EVIDENCE—SUFFICIENCY. Publications of a Greek Letter fraternity showing a spirit of insubordination to the authorities of a high school are sufficient to support a finding to the effect that the fraternity was detrimental to good order in the schools.

SAME—POWER TO REGULATE—REASONABLENESS. The school board directors of a high school have the power under Bal. Code, §§ 2339 and 2362, to enforce rules forbidding pupils in the school from joining secret fraternal societies, upon pain of loss of all privileges of the school except that of attending classes, although the meetings of the societies are held out of school hours and under parental protection, where it is shown that such societies have a tendency to destroy good order, discipline and scholarship; and such regulation is not unreasonable.

Appeal from a judgment of the superior court for King county, Frater, J., entered March 3, 1906, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, denying an application for an injunction to restrain school directors from enforcing certain regulations against members of high school secret societies. Affirmed.

[1]Reported in 86 Pac. 642.

*Perry & Hanson* and *C. L. Willett,* for appellant, cited:
*Wysinger v. Crookshank,* 82 Cal. 588, 23 Pac. 54; *Fertich
v. Michener,* 111 Ind. 472, 11 N. E. 605, 60 Am. Rep. 709;
*State ex rel. Stallard v. White,* 82 Ind. 278, 42 Am. Rep.
496; *Mizner v. School District* (Neb.), 96 N. W. 128; *Dritt
v. Snodgrass,* 66 Mo. 286, 27 Am. Rep. 343; *State ex rel.
Clark v. Osborne,* 24 Mo. App. 309; *King v. Jefferson City
School Board,* 71 Mo. 628, 36 Am. Rep. 499; *Morrow v.
Wood,* 35 Wis. 59, 17 Am. Rep. 471; *Trustees of Schools v.
People ex rel. Van Allen,* 87 Ill. 303, 29 Am. Rep. 55.

*Kenneth Mackintosh* and *R. W. Prigmore,* for respond-
ents, cited: *Dillon v. Whatcom County,* 12 Wash. 391, 41
Pac. 174; *Selde v. Lincoln County,* 25 Wash. 198, 65 Pac.
192; *Templeton v. Pierce County,* 25 Wash. 377, 65 Pac.
553; *State ex rel. Schroeder v. Superior Court,* 29 Wash. 1,
69 Pac. 366; *Deskins v. Gose,* 85 Mo. 485, 55 Am. Rep. 387;
*Kinzer v. Directors etc.* (Iowa), 105 N. W. 686; *Baurne v.
State,* 35 Neb. 1, 52 N. W. 710; *Ferriter v. Tyler,* 48 Vt.
444, 21 Am. Rep. 133; *Board of Education v. Booth,* 23
Ky. Law 288, 62 S. W. 872; *Lander v. Seaver,* 32 Vt. 114,
76 Am. Dec. 156; *Watson v. Cambridge,* 157 Mass. 561, 32
N. E. 864; *Board of Education v. Purse,* 101 Ga. 422, 28
S. E. 896, 65 Am. St. 312; *Hutton v. State,* 23 Tex. App.
386, 59 Am. Rep. 776; *King v. Jefferson City School Board,*
71 Mo. 628, 36 Am. Rep. 499.

CROW, J.—This action was commenced by appellant
against the board of school directors of school district num-
ber 1 in Seattle, King county, Washington, and other school
authorities of said district, to restrain them from enforcing
certain rules which deprive members of Greek Letter frater-
nities of the privileges of said high school, except that of
attending classes. The appellant George Wayland, a minor
eighteen years of age, sues by Russell Wayland his guard-
ian *ad litem,* on behalf of himself and other members of the
Gamma Eta Kappa fraternity. He alleges that all members

of said fraternity are of school age and entitled to all the privileges of said high school; that they are unjustly prohibited from belonging to debating clubs, athletic teams, school bands, glee clubs, orchestras, cadet corps, and other kindred organizations of said school, and that, unless they withdraw from said fraternity, they will also be deprived of the customary honors attending graduation; that they have no privileges except that of attending classes; that said rules are in excess of lawful authority; that there is nothing objectionable in said fraternity; that its meetings are held at the homes of members, with the consent of their parents, every two weeks, from eight to ten o'clock p. m., and never during school hours; that they are not under the jurisdiction of the school authorities, but are under parental control; that at said meetings improper conduct is prohibited, and that a high class literary program is carried out. The answer pleaded an affirmative defense, substantially alleging the facts afterwards found by the trial court. From a final judgment refusing injunctive relief, this appeal has been taken.

The trial court made findings of fact, from which it appears that, at the time of the commencement of this action, George Wayland was a student in the Seattle high school and also a member of a certain Greek Letter secret society, known as the Gamma Eta Kappa fraternity; that the membership in said fraternity, and in other similar high school secret societies, was confined particularly to high school students; that such societies were, therefore, usually known as high school fraternities; that members other than such students were admitted as honorary members only; that said Gamma Eta Kappa fraternity was first organized in Seattle during the year 1900, at which time a request was made by it for the use of the name of said Seattle high school; that before acting on said request, the high school authorities instituted a careful investigation to ascertain the probable effect of such societies on the school; that after such investigation and

after receiving reports from many prominent educators, all of whom unqualifiedly condemned the influence of said societies as highly deleterious and injurious, the school board of said Seattle district, on May 7, 1901, passed a resolution whereby said request for the use of the name of the Seattle high school in connection with said fraternity was refused, and membership of students in any secret society connected with said school forbidden; that at all times thereafter it was contrary to the rules and regulations of said high school for pupils to become members of the said fraternities; that afterwards said George Wayland, while a student in said school, became a member of said Gamma Eta Kappa fraternity as did other students; that it was also contrary to the said rules and regulations for students to become pledged to said secret societies; that said rules and regulations were from time to time modified to meet emergencies in accordance with the activities of said societies in pledging or initiating members; that on May 5, 1905, the school board by final action, amended its former rules so as to provide that all students who were then members of any high school secret society, or pledged to become such, who would promise that, so long as they remained students of said high school, they would not become members of any other such secret society, or give any promise or pledge to become such, or solicit any other student to give any promise or pledge to become a member of any high school fraternity or secret society, and in good faith kept such promise—such students would be restored to the privileges of such school; otherwise all students who thereafter should become members of, or in any way pledge or bind themselves to join, any high school fraternity or secret society, or should initiate or pledge any other students, or in any way encourage or foster the fraternity spirit in the high school, should be denied all the privileges of the high school except those of the class room; that the influence of the said Gamma Eta Kappa fraternity and similar secret societies, and the membership and pledg-

ing of students therein, permeating said school, injuriously affected the good order and discipline thereof; that in adopting the various rules and regulations aforesaid, and in denying certain privileges of said school to pupils who refused to comply therewith, the respondents at all times acted in good faith and in the exercise of an honest judgment; that such action was at all times general in its application and at no time special, malicious, or arbitrary; and that all such rules and regulations, and particularly those in force and effect at the time of the institution of this suit, were reasonable and necessary and were wholly within the powers of the respondents.

It will be observed that no attempt is being made by the respondents to deny appellant any instruction afforded by class work or by the required curriculum of the school. He is only denied certain other privileges such as participation in athletic, literary, military, musical, or class organizations. In other words, the respondents made it optional with appellant to determine whether, against the known wishes of the school authorities, he would continue his membership in said secret society, and thereby forfeit participation in the privileges above mentioned, which were no part of the class work or curriculum, or whether by complying with the adopted rules, he would elect to enjoy the privileges of which he is now deprived.

The appellant contends that the trial court erred, (1) in making certain of the above findings of fact to which he has excepted; and (2) in entering judgment dismissing his complaint. Appellant especially complains that the evidence does not sustain the finding that all active members of the Gamma Eta Kappa fraternity were high school students, and that any members not students were honorary members only. There may have been an instance in which an active member was not a student when initiated, but he had been a student immediately prior thereto, and there is no evidence that he did not intend to so continue. In any event,

it is immaterial whether he or even other members were
students. It clearly appears that the fundamental purpose
was to organize with students of the Seattle high school.
The evidence shows that this particular Gamma Eta Kappa
fraternity is a branch or chapter of a general organization
having other chapters in various high schools throughout the
country; that it is subordinate to a general or parent gov-
erning body; and that the entire organization is essentially
a confederation of associations composed in the main of high
school students. We call attention to a certain periodical
which, with the consent of both appellant and respondents,
was admitted in evidence, and is entitled: "The Gamma
Eta Kappa Magazine. A Quarterly devoted to the Interest
of the Gamma Eta Kappa Fraternity of the United States
of America, and published by the Grand Conclave." This
magazine appears to be in the charge of one general editor
located in San Francisco, assisted by chapter editors, mem-
bers of twenty distinct chapters, including Rho Gamma chap-
ter, the one of which appellant is a member, purporting to
be connected with the Seattle high school. In this magazine
we find the following editorial:

"In former editorials we have frequently dwelt upon our
old standby of High School Fraternities versus School Boards
and Principals, but we feel compelled to again state the
facts, on account of recent developments. The principal of
the Seattle High School does not know what a fraternity is
or he would not attempt to enforce his proposed futile plans.
It is simply a case of all educators not educated. Imagine
the monarch that could prohibit a man from wearing a fra-
ternity pin. The Sacramento Board of Education by a vote
of 6 to 3 recently decided 'To forbid any member of the
Sacramento High School from joining a frat society in that
school.' There is no penalty affixed, and the resolution was
simply adopted to quell public sentiment in order to secure
a favorable vote from the people on new school bonds. In
voting on this motion but one member of the board expressed
the belief that the law would uphold them in attempting
to crush a society in a public institution; in other words

they are educated. We hope that others will learn and save us the trouble of summoning our army of able attorneys, who are willing to defend us in the courts, and in doing so will make these uneducated beings feel their lack of knowledge with humiliation and chagrin at the expense of the poor unfortunates."

This magazine also publishes a letter from the Rho Gamma or Seattle chapter, in which the existing differences between it and the Seattle high school authorities are discussed. This letter in part says:

"And now comes the most unkindest cut of all. Beginning with the coming school year, in addition to the restrictions already imposed, all members of fraternities and sororities will be denied the right of graduation or of representing the school in any field of effort or competition. This is according to an open letter from Superintendent Cooper to Professor Twitmeyer. He calls Mr. Twitmeyer's attention to a recent ruling of the board which authorizes his action. According to the ruling, the superintendent is given authority to 'repeal all existing regulations.' This phrase may or may not be significant, for as far as the secret societies are concerned they will go ahead and prosper as before. There will be no difficulty in pledging and initiating new members as they may be desired, because, far from creating any dismay among the students it has aroused a feeling of indignation and that natural antipathy to restriction which is inherent in the American youth. . . . It is barely possible that Rho Gamma Chapter will incorporate, but it is a question whether such action would help matters any or would only add fuel to the flame."

Letters from the Sacramento, California, and Denver, Colorado, chapters are also published, showing a like spirit of insubordination against lawful school authority. We incorporate these quotations in this opinion to illustrate the seditious spirit permeating this organization, with which the school authorities were obliged to deal. Without further discussion of the evidence, we express our complete satisfaction with each and all of the findings made by the honorable trial court.

The only remaining question is whether the board of education had authority 'to adopt the rules complained of. Appellant insists that, Bal. Code, § 2334 (P. C. § 7295), provides who shall be admitted to the public schools, and that the board of education cannot exclude any pupils so entitled to attend. No issue need be taken with this contention. The board has not excluded the appellant from the Seattle high school, neither has it threatened to expel or suspend him. He can and does attend school and, under our construction of the rules adopted, he is at the same time permitted to continue his membership in the Gamma Eta Kappa fraternity, although in doing so he opposes the authority of the board, and thereby forfeits certain privileges which are no necessary part of the curriculum or class work, from which he is not excluded. Respondents are only seeking to prevent appellant and his associates from dictating the terms on which they shall enjoy certain privileges which are merely incidental to the regular school work, and this they have authority to do.

Appellant further contends that, as the fraternities meet out of school hours at the homes of members, and at no time in the school building, and as their parents consent to this action, the board is exceeding its lawful authority in entering their homes, in withdrawing from parents the control of their children, and in dictating what the children shall or shall not do out of school hours. We think this contention unreasonable. The board has not invaded the homes of any pupils, nor have they sought to interfere with parental custody and control. They have not said these fraternities shall not meet at the various homes, nor have they attempted to control students out of school hours. The evidence shows beyond a doubt that these secret organizations, when effected, foster a clannish spirit of insubordination, which results in much evil to the good order, harmony, discipline, and general welfare of the school. We can express these conditions in no

better terms than by quoting from the testimony of Professor Geiger, the principal of the high school, who says:

"I have found that membership in a fraternity has tended to lower the scholarship of the fraternity members, . . . the general impression that one gets in dealing with them is one of less respect and obedience to teachers. It is found that there is a tendency toward the snobbish and patronizing air, not only toward the pupils but toward the teachers; there is a certain contempt for school authority. This is in a measure, I think, aggravated by the attitude of the parent organization, which seems to encourage members of the fraternity in this contempt for school authority, and one of the most difficult things in dealing with the situation is the fact that the members have this allegiance to a general organization or headquarters, which are often located in a distant city and which it is difficult to reach and which exercises upon the members in the local school a very powerful influence. . . . In dealing with these fraternity members I have been assured more than once that they considered their obligation to their fraternity greater than that to the school."

The evidence of this witness, with that of the president of the school board and other school authorities, overwhelmingly establishes the fact that such fraternities do have a marked influence on the school, tending to destroy good order, discipline and scholarship. This being true, the board is authorized, and it is its duty, to take such reasonable and appropriate action by the adoption of rules as will result in preventing these influences. Such authority is granted by § 2339 and subdivisions 5 and 6 of § 2362, Bal. Code (P. C. §§ 7300, 7323). It would be difficult to confer a broader discretionary power than that conferred by these sections. Manifestly it was the intention of the legislature that the management and control of school affairs should be left entirely to the discretion of the board itself, and not to the judicial determination of any court. These powers have been properly and legally conferred upon the board, and unless it arbitrarily exceeds its authority, which it has not done here,

tho courts cannot interfere with its action. *Kinzer v. Di- rectors etc.* (Iowa), 105 N. W. 686; *Board of Education v. Booth,* 110 Ky. 807, 62 S. W. 872; *Watson v. Cambridge,* 157 Mass. 561, 32 N. E. 864.

The appellant has cited a number of cases which, in effect, decide that the school board would have no authority to re- fuse him admission to the high school. This the board has not attempted to do; hence these citations are not in point. The only case mentioned by appellant which seems to be cognate to the questions here involved is that of *State ex rel. Stallard v. White,* 82 Ind. 278, in which the supreme court of Indiana held that the officers and trustees of Purdue University, an institution controlled and supported by the state, could not require an applicant, otherwise qualified, to sign a pledge relative to membership in Greek Letter fraterni- ties as a condition precedent to his admission as a student. The university authorities had adopted a rule that no stu- dent should be permitted to join, or be connected with, any so-called Greek Letter or other college secret society; and as a condition of admission to the university, or promotion therein, should be required to give a written pledge to ob- serve such regulation. The relator declined to sign such a pledge and was refused admission as a student for that rea- son only. The decision which ordered his admission was by a divided court. The majority opinion, however, is not in point as supporting appellant's contention. The appellant has not been refused admission to the high school. The school authorities have only endeavored to exercise a gov- ernmental control over him after his admission, without even attempting to suspend him. In the majority opinion in *State ex rel. Stallard v. White, supra,* the court said:

"The admission of students in a public educational insti- tution is one thing, and the government and control of stu- dents after they are admitted, and have become subject to the jurisdiction of the institution, is quite another thing. . . . It is clearly within the power of the trustees, and of the

faculty when acting presumably, or otherwise, in their behalf, to absolutely prohibit any connection between the Greek fraternities and the university. The trustees have also the undoubted authority to prohibit the attendance of students upon the meetings of such Greek fraternities, or from having any other active connection with such organizations, so long as such students remain under the control of the university, whenever such attendance upon the meetings of, or other active connection with, such fraternities tends in any material degree to interfere with the proper relations of students to the university."

The above language shows that the Indiana case upon which the appellant relies utterly fails to sustain any of his contentions. Our attention has not been called to any adjudicated case at all similar to this. Citation to authority, however, is unnecessary, as under our statutes, the respondent school board had undoubted authority to take the action of which appellant complains, and the courts should not interfere with said board in the enforcement of the rules and regulations which it has adopted.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, ROOT, and DUNBAR, JJ., concur.