[Civ. No. 969.   First Appellate District.—January 10, 1912.]

DORIS BRADFORD, by RUTH BRADFORD, a Feme Sole, Her Guardian ad Litem, Petitioner, Appellant, v. THE BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO, T. H. BANNERMAN, MARY KINCAID, HENRY PAYOT, and RICHARD WHEELAN, Respondents.

PUBLIC SCHOOLS — ACT FORBIDDING SECRET FRATERNITIES—POWER OF BOARD TO EXPEL SCHOLAR—POLICY OF LAW—CONSTITUTIONALITY.— Under the act of 1909 (Stats. 1909, p. 332), to prevent the formation and prohibit the existence of secret fraternities in any elementary or secondary school in this state, and requiring boards of school trustees and boards of education to enforce the act, with power to expel any scholar who violates the law, upon appeal from a judgment refusing to reinstate an expelled scholar who has violated the act, the policy of the legislature in enacting it cannot be considered; but the only question to be determined is whether or

not the legislature, in passing it, acted within the limits imposed upon it by the constitution.

ID.—PROVISIONS OF CONSTITUTION NOT VIOLATED—SPECIAL IMMUNITIES —LOCAL OR SPECIAL LAWS.—The act of 1909 does not violate or contravene the provisions of section 21 of article I of the constitution that no citizen or class of citizens shall be granted privileges or immunities which upon the same terms are not granted to all citizens, because immunity is granted to normal schools, and special immunity to all pupils who join certain specified fraternities not connected with the public schools. Nor is such act local or special legislation in violating section 25 of article IV, forbidding the legislature to pass local or special laws "granting to any corporation, association or individual any special or exclusive right, privilege or immunity."

ID.—GENERAL LAW—ACT APPLYING UNIFORMLY TO PERSONS OF A PARTICULAR CLASS.—An act applying uniformly to all citizens or persons of a particular class is a general law, and not special or local, either in violation of section 21 of article I or of section 25 of article IV of the constitution, if such particular class is founded upon some natural, intrinsic, or constitutional distinction differentiating its members from the general body from which the class is selected. It is held that the younger and more immature pupils of the public schools may quite properly form a particular class, in distinction from normal schools or colleges, and that the act applies equally to all of such particular class.

ID.—QUESTION FOR LEGISLATURE—PRESUMPTION—PROVINCE OF COURTS. The question whether the individuals affected by a law do intrinsically constitute a particular class is primarily one for the legislative department of the state, and when such legislative classification is attacked in the courts, every presumption is in favor of the legislative act; and if sufficient reasons may be assumed therefor, the act will be upheld; and to warrant a court in adjudging it void, as special legislation, it must clearly appear that there was no reason sufficient to warrant the legislative department in finding a difference or making a discrimination.

ID.—EXCEPTION ALLOWING PUPILS TO JOIN OUTSIDE FRATERNAL ORGANIZATIONS NOT AN INVALID DISCRIMINATION.—The exception in the statute allowing pupils in the public schools to become members of such outside associations, not connected with the public schools, as the Native Sons of the Golden West, Native Daughters of the Golden West, or other kindred outside organizations, is not an invalid discrimination, since no such deleterious effects could follow such membership as in the case of secret fraternities or sororities existing wholly among the pupils as forbidden by law.

ID.—TITLE OF ACT — PROHIBITION OF "SECRET OATH-BOUND FRATERNITIES."—The title of the act as "An act to prohibit the formation and existence of secret oath-bound fraternities in the public schools"

is not rendered invalid under section 24 of article IV of the constitution, because the words "sororities or clubs," used in the body of the act, are not expressed in its title. The word "fraternities" used in the title, in its popular sense, includes organizations of both sexes, and expresses "sororities or clubs," and the body of the act is not broader than its title.

ID.—ACT NOT VIOLATIVE OF FEDERAL CONSTITUTION.—The act of 1909 does not violate that provision of the federal constitution which provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." That constitutional provision does not include rights and privileges granted to citizens which depend solely upon the law of a state.

ID.—SYSTEM OF PUBLIC SCHOOLS A STATE INSTITUTION, NOT WITHIN FEDERAL GUARANTY.—The system of public schools of this state is a state institution, and is subject to the exclusive control of the constitutional authorities of the state, and the right of attending a public school, though capable of enforcement at law, if wrongfully infringed, is not such a right as is guaranteed by such provision of the federal constitution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Weinmann, Wood & Cunha, and L. R. Weinmann, for Appellant.

Percy V. Long, City Attorney, and John F. English, Assistant City Attorney, for Respondents.

KERRIGAN, J.—This is an appeal from an order and judgment, denying the petitioner a writ of mandate to compel the respondents, the board of education of the city and county of San Francisco and the members thereof, to admit petitioner as a pupil to the Girls' High School of San Francisco, said board having theretofore suspended her for the reason that, while enrolled as a pupil in said school, she joined and became a member of a secret, oath-bound Greek letter sorority existing in said school in violation of a recent act of the legislature.

In the year 1909 there was enacted in this state the following statute:

"An Act to prevent the formation and prohibit the existence of secret, oath-bound fraternities in the Public Schools.

"The People of the State of California, represented in Senate and Assembly, do enact as follows:

"Section 1.    From and after the passage of this Act, it shall be unlawful for any pupil, enrolled as such in any elementary or secondary school of this State, to join or become a member of any secret fraternity, sorority or club, wholly or partly formed from the membership of pupils attending such public schools, or to take part in the organization or formation of any such fraternity, sorority or secret club; provided that nothing in this section shall be construed to prevent anyone subject to the provisions of the section from joining the order of the Native Sons of the Golden West, Native Daughters of the Golden West, Foresters of America, or other kindred organizations not directly associated with the public schools of the state.

"Section 2.    Boards of School Trustees and Boards of Education shall have full power and authority to enforce the provisions of this act and to make and enforce all rules and regulations needful for the government and discipline of the schools under their charge.    They are hereby required to enforce the provisions of this act by suspending, or, if necessary, expelling a pupil in any elementary or secondary school who refuses or neglects to obey any or all such rules or regulations."    (Stats. 1909, p. 332.)

Following the enactment of this statute the board of education of the city and county of San Francisco promulgated certain rules and regulations and passed resolutions having for their object the enforcement of this act.

It appears from the respondents' answer (the allegations of which are admitted to be true by petitioner's demurrer thereto and by a subsequent stipulation of the parties), "That sub-sequent to the adoption of the aforesaid act of the legislature Doris Bradford, petitioner herein, was a pupil enrolled as such in the Girls' High School, a secondary school in the state of California; and that subsequent to the said adoption of the said act of the legislature and while such an enrolled pupil said Doris Bradford joined and became a member of a secret, oath-bound Greek letter sorority existing in said Girls' High School and known as Omega Nu (Gamma Beta Chapter),

partly formed from the membership of pupils attending the said Girls' High School; that said Omega Nu Sorority was at the time said Doris Bradford became a member of the said Omega Nu Sorority, ever since has been and now is directly associated with the public schools of the state of California, and that Doris Bradford ever since so joining said sorority has been and still is a member of said Omega Nu Sorority.''

The said answer also set up the facts as to the adoption of said rules by said board after the passage of said act, and the adoption by said board of a resolution suspending said petitioner as a member of said school.

To this answer the petitioner demurred, and a hearing was had upon this demurrer. The demurrer being overruled and the foregoing facts being stipulated by the parties, the court gave judgment dismissing the petition and denying petitioner all relief. The appeal is from said judgment.

Before proceeding to a discussion of the case a brief reference to the growth and effect of secret societies in the public schools of this country may not be wholly superfluous.

The first Greek letter society in a secondary school was Alpha Phi, a literary society, which became a part of a fraternity in 1876. Subsequently secret societies, patterned after college and university fraternities, sprang into existence in the high schools all over the country, until now they have ''become so numerous,'' says a writer on the subject, ''as to make it necessary to manipulate the Greek alphabet in an artful way in order to make the necessary distinctions.'' In time many educators came to believe that whatever good might be claimed for college fraternities was not shared by secret fraternities organized among boys and girls attending the preparatory schools whose characters are yet unformed. It has been said of such societies that they tend to engender an undemocratic spirit of caste, to promote cliques and to foster a contempt for school authority. Doubtless these organizations have many redeeming features, and, we may say, the standard of excellence of some of them is such that they are not opposed by school authorities. (Report of Commission of Education, Annual Reports, 1907, of Interior Department, vol. 1, pp. 437, 441; Encyclopedia Britannica, 11th ed., vol. XI, p. 40.) Nevertheless, in order to curb what is said to be their evil effects in secondary schools, rules and regu-

lations have recently been adopted by boards of education in many of the cities of the country; laws have also been enacted in Ohio, Indiana, Minnesota, Kansas and other states, either absolutely forbidding them or placing them under control. Cases arising under these laws and local regulations have come before the courts of those states, and such courts have uniformly held valid reasonable rules adopted by school authorities to prevent the establishment and development of these secret societies in preparatory schools. (*Wayland* v. *Board of School Directors,* 43 Wash. 441, [7 L. R. A., N. S., 352, 86 Pac. 642] ; *Wilson* v. *Board of Education,* 233 Ill. 464, [13 Ann. Cas. 330, 15 L. R. A., N. S., 1136, 84 N. E. 697] ; *Favorite* v. *Board of Education,* 235 Ill. 314, [85 N. E. 402] ; *People* v. *Wheaton College,* 40 Ill. 186.)

Coming, now, to a consideration of the case at bar, it is the contention of appellant that the statute in question is void in that it contravenes several provisions of our constitution. Much is said in the interesting and instructive briefs of counsel about the policy of the legislature in enacting laws of this character. With that, however, this court has no concern. We are simply required to decide whether or not, in passing the law in question, the legislature acted within the limits imposed upon it by the constitution. As was said in the case of *Wilson* v. *Board of Education,* 137 Ill. App. 192, where this very question of secret fraternities among school pupils was being considered: "There may be a contrariety of opinion as to whether secret societies in schools among pupils are beneficial or harmful to either the pupil or the cause of education. In such condition, who shall decide whether the pupils should be encouraged or not in making affiliation with any of them—the courts or the board? It makes no difference which of them shall control so far as affecting the ultimate conclusion is concerned, for the courts have been quite outspoken in their condemnation of such societies in schools as hurtful to the pupil and detrimental to his educational progress. Even if it were otherwise, if the rule is reasonable and equal in its operation, the courts cannot impose their judgment or opinion contrary or in opposition to that of the board, which, in the promulgation of such rules, acts judicially."

In support of her contention that the act is void, appellant first claims that it contravenes section 21 of article I of the constitution, providing, "Nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens"; and also that part of section 25 of article IV providing that the legislature shall not pass local or special laws, "granting to any corporation, association or individual any special or exclusive right, privilege or immunity."

It is argued by counsel that this contravention of constitutional provisions arises because the act grants an *immunity* to certain pupils in the public schools of the state, viz., those in the normal schools, in that only the elementary and secondary schools come within the provisions of the act; that it grants a special privilege to such pupils by allowing them to join fraternities, sororities and secret clubs while other. students in the public schools are punished for doing the same thing; that it grants a privilege and immunity to certain fraternities, viz., the order of the Native Sons of the Golden West, the Native Daughters of the Golden West, the Foresters of America, and other kindred organizations not directly associated with the public schools, because pupils in said schools may join such societies and not come within the inhibition of the act..

The question of the construction and application of said section 21 of article I has come before the supreme court of this state in many cases, and among them quite recently in the case of *Wheeler* v. *Herbert*, 152 Cal. 233, [92 Pac. 357], where that court said (speaking through Mr. Justice Shaw): "A law applying uniformly to all citizens of a particular class does not violate this section (Const., art. I, sec. 21), if the class is one founded upon some natural, intrinsic or constitutional distinction differentiating its members from the general body from which the class is selected." (Citing California cases.)

Again, in *Ex parte King*, 157 Cal., at page 164, [106 Pac. 579], the supreme court had the same question before it, and said: " . . . a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction. . . . If the individuals to whom the legislation is applicable

constitute a class characterized by some substantial qualities or attributes of such a character as to indicate the necessity or propriety of certain legislation restricted to that class, such legislation, if applicable to all members of that class, is not violative of our constitutional provisions against special legislation. . . . The question whether the individuals affected by a law do constitute such a class is primarily one for the legislative department of the state, and it is hardly necessary to cite authorities for the proposition that when such a legislative classification is attacked in the courts, every presumption is in favor of the legislative act. When upon the facts legitimately before a court it is reasonable to assume that there were reasons, good and sufficient in themselves, actuating the legislature in creating that class, though such reasons may not clearly appear from a mere reading of the law, such assumption will be made, and the legislation upheld. To warrant a court in adjudging the act void on this ground, it must clearly appear that there was no reason sufficient to warrant the legislative department in finding a difference and making the discrimination.''

Applying this construction to the act under consideration, it is quite apparent to us that the younger and more immature pupils of the public schools may quite properly form a class and be made the subject of this character of legislation. Normal schools and colleges are attended by students who are preparing for the serious affairs of life; and being older in years and with wider experience are better fortified to withstand any possible hurtful influence attendant upon membership in secret societies and clubs than the younger pupils attending elementary and secondary schools, who are less experienced and more impressionable.

We have no doubt that there is a sufficient difference between these last-mentioned schools and the normal to constitute a proper basis for classification, and that the statute applies equally to all of the particular class mentioned.

Neither does the exception in the statute of the order of the Native Sons of the Golden West and similar fraternal societies constitute, in our opinion, an invalid discrimination. The act itself requires that they be not ''directly associated with the public schools of the state.'' It is clear that the legislature intended to discountenance only secret societies

in the elementary and secondary schools which are formed almost entirely of the pupils of such schools, and which, in the opinion of the legislature, were calculated to diminish the efficiency of the educational system of the state and exert a harmful influence upon the younger pupils of its schools as such.   No such deleterious effect has been or could be attributed to the occasional membership of such pupils in the fraternal orders excepted in the statute, and such exception, therefore, cannot be said to be arbitrary or invalid.

We hold, therefore, that the act is general in its character and not special, and does not contravene the provisions of the constitution referred to.

The next ground of attack urged by appellant is that the act does not conform to that portion of section 24 of article IV of the constitution which provides that ''Every act shall embrace but one subject, which shall be expressed in its title.''

It will be observed that the title of the act states that it is an act to prohibit the formation and existence of ''secret, oath-bound fraternities in the public schools,'' while the body of the act forbids the formation and existence of ''secret fraternities, sororities or clubs.''   Basing her argument upon this difference of language, it is the contention of appellant that the act is broader in its scope than the title, for the reasons, first, that the expression ''secret fraternities'' is broader than ''secret, oath-bound fraternities,'' and, second, that the title mentions only fraternities, whereas the body of the act deals also with sororities and clubs.

In order that a fraternity may be secret, a promise or an agreement must be made by its members not to reveal its proceedings or secret work, and as to various other matters, which undertaking is doubtless invariably in the form of a pledge, an obligation, or of a nonjudicial oath.   As here used, the compound word ''oath-bound'' is synonymous with the word ''secret.''   We have no doubt that this is the sense in which the term was employed by the legislature.   Dictionary definitions warrant this interpretation of the language, and judicial authority for the same may be found.   In the case of *State* v. *Guy,* 59 Minn. 6, [50 Am. St. Rep. 389, 60 N. W. 676], it is said that an oath ''in its broadest sense includes any form of attestation by which a party signifies that he is bound in conscience to perform an act faithfully.

and truthfully.'' (See, also, *Commonwealth* v. *Jarboe,* 89 Ky. 143, [12 S. W. 138].)

We think also that the word "fraternities" in its popular sense and as here used includes organizations of both sexes, sororities and clubs. In this state our codes contain sections declaring that "words used in the masculine gender include the feminine.'' While such sections apply specifically to the codes alone, they emphasize the fact that in the enactment of laws the legislature frequently employs the masculine gender in matters where it is evident that the feminine is not excluded. Even if the word "fraternity" could be said to mean an organization of males only, it might still be apparent from the context that it was used in a sense to include the opposite sex also. But without resorting to any such latitude of construction, the word itself has a broader signification. We find the following dictionary definitions of "fraternity":

Standard Dictionary: "Brotherhood or sisterhood in general"; "a body of persons associated or held to be associated together by common interests or characteristics"; "a brotherhood or sisterhood." "Greek-letter fraternities. (U. S.) College literary or social organizations known by the initial letter of a Greek motto or the like, and consisting usually of affiliated chapters. . . . ''

Webster's International Dictionary: "The state or quality of being fraternal or brotherly; brotherhood . . . company; a brotherhood; a society."

Thus it is manifest that the word "fraternity" in the title is broad enough to include "sorority" and "club" mentioned in the body of the statute. We conclude, therefore, that the body of the act is not broader than the title.

Finally, we are unable to perceive that the statute is, as claimed by appellant, repugnant to the fourteenth amendment to the federal constitution, because it deprives a citizen of the right to attend a public school of the state. The part of the constitutional provision relied upon by appellant reads: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.''

It has been held that rights and privileges granted to citizens which depend solely upon the laws of a state are not within this constitutional inhibition. (*Cory* v. *Carter,* 48 Ind.

327, [17 Am. Rep. 738] ; *Marshall* v. *Donovan,* 10 Bush (Ky.), 681; *People ex rel. King* v. *Gallagher,* 93 N. Y. 438, [45 Am. Rep. 232].)   The system of public schools of this state is a state institution, and is subject to the exclusive control of the constitutional authorities of the state.   It is, of course, true that the right of attending a public school is capable of enforcement at law, but it is not such a right as is guaranteed by the above-quoted provision of the federal constitution.   ''The privilege of receiving an education at the expense of the state is not one belonging to those upon whom it is conferred as citizens of the United States, and, therefore, so far as the 'privileges and immunities' clause of the fourteenth amendment is concerned, might be granted or refused to any individual or class at the pleasure of the state.''   (6 Am. & Eng. Ency. of Law, p. 77.)   In *Ward* v. *Flood,* 48 Cal. 36, [17 Am. Rep. 405], it was said: ''It will indeed be readily conceded that the privilege accorded to the youth of the state by the law of the state, of attending the public schools maintained at the expense of the state, is not a privilege or immunity appertaining to a citizen of the United States as such; and it necessarily follows, therefore, that no person can lawfully demand admission as a pupil in any such school because of the mere *status* of citizenship; and it is perhaps hardly necessary to add that assuredly no person can be said to have been deprived of either life, liberty or property because denied the right to attend as a pupil at such schools, however obviously insufficient and untenable be the ground upon which the exclusion is put.''

We are of the opinion that the statute attacked by appellant is valid and constitutional, and that the judgment appealed from should be affirmed, and it is so ordered.

Lennon, P. J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 9, 1912.