FARRINGTON, GOVERNOR OF HAWAII, ET AL. *v.* TOKUSHIGE ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 465.　Argued January 21, 1927.—Decided February 21, 1927.

1. Acts of the Legislature of Hawaii " relating to foreign language schools and the teachers thereof," and regulations adopted there-

under by the Department of Public Instruction, taken as a whole appear to infringe rights, under the Fifth Amendment, of owners of private Japanese schools, and the parents of children attending them; and in granting an interlocutory injunction against enforcement of the Acts and regulations the United States District Court of Hawaii did not abuse its discretion. P. 298.

2. Upon the present record and argument, the Court cannot undertake to consider the constitutional validity of the provisions separately. P. 298.

3. The due process clause of the Fifth Amendment affords the same protection to fundamental rights of private school owners, parents and children against invasion by the Federal Government and its agencies (such as a territorial legislature) as it has been held the Fourteenth Amendment affords against action by a State. P. 299.

11 F. (2d) 710, affirmed.

CERTIORARI (*post,* p. 677) to a decree of the Circuit Court of Appeals which affirmed an interlocutory decree of the United States District Court of Hawaii enjoining the Governor, Attorney General and Superintendent of Public Instruction of the Territory from enforcing the provisions of the Hawaiian Foreign Language School Law, and regulations. The plaintiffs were members of numerous voluntary associations conducting foreign language schools for instruction of Japanese children.

*Mr. William B. Lymer,* Attorney General of the Territory of Hawaii, with whom *Marguerite K. Ashford,* First Deputy Attorney General, was on the brief, for the petitioners.

These laws do not violate the Constitution. *Pierce* v. *Society of Sisters,* 268 U. S. 510; *Meyer* v. *Nebraska,* 262 U. S. 390; and *Bartels* v. *Iowa,* 262 U. S. 404, concern prohibitory legislation alone, and not purely regulatory measures such as those involved in this case, which attempt rather to supervise and control than to abolish foreign language schools.

It would be a sad commentary on our system of government to hold that the Territory must stand by, impo-

tent, and watch its foreign-born guests conduct a vast system of schools of American pupils, teaching them loyalty to a foreign country and disloyalty to their own country, and hampering them during their tender years in the learning of the home language in the public schools,—to hold that the Territory could not by mere regulatory measures even alleviate these evils to a moderate extent while not interfering in the least with the proper maintenance of these schools or the teaching of foreign languages in them, but on the contrary making them more efficient for this their declared object.

The State has authority over such schools for at least two reasons: (1) that as *parens patriae* it has extensive power with respect to infants; and (2) that it is vitally interested in the quality of its citizenship.

An act may go far in prohibitory form and yet be regulatory. *McCluskey* v. *Tobin,* 252 U. S. 107. That regulation, as distinguished from prohibition, may extend to all occupations and professions, is shown by *Gundling* v. *Chicago,* 177 U. S. 183. See also, *Adams* v. *Tanner,* 244 U. S. 590; *Dent* v. *West Virginia,* 129 U. S. 114; *Ex parte McManus,* 151 Cal. 331; *Mutual Film Corp.* v. *Ohio Indus'l. Comm.,* 236 U. S. 230.

This is not a question of whether the court may disagree with the legislature on the question of advisability, or policy, or reasonableness; it is a question of whether the legislation is arbitrary or unreasonable in the established legal sense. *Lindsley* v. *Nat. Gas Co.,* 220 U. S. 61; *Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342; *Crescent Oil Co.* v. *Mississippi,* 257 U. S. 129; *Armour & Co.* v. *North Dakota,* 240 U. S. 510; *Ward & Gow* v. *Krinsky,* 259 U. S. 503; *Territory* v. *Takanabe,* 28 Haw. 43; *Patsone* v. *Pennsylvania,* 232 U. S. 138.

Private schools are a proper subject of regulation. *State* v. *Bailey,* 157 Ind. 324. Compulsory education statutes do not require attendance at public schools

alone, but at either public or private schools.   Necessarily, in order to meet the requirements in respect of the period of years and the field of knowledge to be covered, it must be within the power of the legislature to regulate within reasonable limits the qualifications of the teachers, the subjects to be covered, the instruction to be given and how and to what extent—within the limits of the power—other instruction should be forbidden.   The right to regulate private schools in Hawaii has long been unquestioned.

See *Barbier* v. *Connolly*, 113 U. S. 27; *Interstate Ry. Co.* v. *Massachusetts*, 207 U. S. 79.

Even if one or more of the provisions of the Act be unconstitutional, the remainder, if found constitutional, should be declared valid.   In no event could the plaintiff schools complain on behalf of the teachers or as to the provisions relating to the teachers, for they are not the parties hurt by those provisions.   *In re Craig*, 20 Haw. 483; *Territory* v. *Field*, 23 Haw. 230; *Milton Dairy Co.* v. *Great Nor. Ry. Co.*, 124 Minn. 239; *Nor. Pac. R. R.* v. *Whalen*, 149 U. S. 157; *Mut. Film Corp.* v. *Kansas*, 236 U. S. 248; *McCabe* v. *Ry. Co.*, 235 U. S. 151; *Davis Mfg. Co.* v. *Los Angeles*, 189 U. S. 207.   Furthermore, it is probable that those teachers who have availed themselves of the law, and taken out permits, have waived the right to question the constitutionality of the legislation.

The issuance of a permit, which is in the nature of a license, is mandatory on the Department, if the applicant has complied with the prescribed conditions, *In re Kalama*, 22 Haw. 96; *Tai Kee* v. *Minister of Interior*, 11 Haw. 57; and if in such case a permit should be refused, the applicant could either compel its issuance by mandamus or else proceed with immunity to act as if he had a permit, *Territory* v. *Kua*, 22 Haw. 307; *Royall* v. *Virginia*, 116 U. S. 572.   No permit can be revoked with-

out giving the holder an opportunity to be heard, *Wilson* v. *Lord-Young Eng. Co.,* 21 Haw. 87; and, even if the provisions as to permits and pledges were invalid, that would not affect the validity of the remaining portions of these Acts. *Territory* v. *Apa,* 28 Haw. 222.

Teachers of American citizens in this extensive system of schools should know at least the elements of the history, institutions, ideals and language of the country in which they are teaching and of which their pupils are citizens.

*Mr. Joseph Lightfoot,* with whom *Mr. Joseph B. Poindexter* was on the brief, for respondents.

The statute unreasonably interferes with the fundamental right of parents and guardians to direct the upbringing and education of children under their control. *Meyer* v. *Nebraska,* 262 U. S. 390; *Bartels* v. *Iowa,* 262 U. S. 404; *Pierce* v. *Society of Sisters,* 268 U. S. 510.

No attempt was made in the Nebraska, Iowa, or Ohio statutes to control the course of study, text books, entrance requirements or qualifications of teachers, nor was there any interference whatsoever with the conduct of private schools except that the English language should be the medium of instruction and that foreign languages as such should not be taught below certain grades. These were declared unconstitutional by this Court as such laws plainly interfere with the right of a parent to direct and control the education of his child.

The Hawaiian statute goes far beyond these statutes in every essential particular; it takes from the parent of a child attending a foreign language school, all control and direction of the education of his child. Complete control of these schools is given to the Department of Education. The effect is to make them public schools in all but the name, though the public contributes nothing to their support. They are prohibited from employing a teacher, teaching a subject, using a book, admitting a pupil, or

engaging in any activity of any nature, unless approved by the Department of Education. Nor can such a school be conducted until a permit is granted and an exorbitant fee paid—a condition not imposed on any other private school in the Territory.

In the public schools all are taught the same lessons of Americanism and democratic ideals, which are considered sufficient for a majority of the pupils, yet the minority of the pupils, whose parents desire to fit them for the battle of life by teaching them a language which will be of great benefit to them in their after careers, attend the foreign language schools where they are further regulated, controlled, taxed, and this, too, in the face of the admitted fact that nothing un-American is taught in the foreign language schools, and the Americanism of the pupils is advanced, not retarded in them.

The sole purpose of the law is the Americanization of the pupils of these schools, though it is admitted that nothing un-American is taught in them. Where a system infringes on the Constitution, a part of the system, though unobjectionable in itself, falls with the system. *Wolff Packing Co.* v. *Industrial Court,* 262 U. S. 552; *Meyer* v. *Nebraska,* 262 U. S. 390. Where one provision of a statute is invalid, the whole must fall, where it is evident that the legislature would not have enacted the one without the other. *Connolly* v. *Pipe Co.,* 184 U. S. 540; *Little Rock Ry.* v. *Worthen,* 120 U. S. 907; *Spraigue* v. *Thompson,* 118 U. S. 90. A subject may be clearly within the police powers, but the enactment may be so unreasonable or inappropriate for the accomplishment of ostensible purposes that the court will declare it null and void. *Dobbins* v. *Los Angeles,* 195 U. S. 223.

The Hawaii law is unconstitutional in that it delegates police power to the Board of Education to be exercised at its discretion, *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Noel* v. *People,* 187 Ill. 587; and no standard is furnished by the

statute for the guidance of the Board, *Adkins* v. *Children's Hospital*, 261 U. S. 525.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The Circuit Court of Appeals affirmed [11 Fed. (2d) 710] an interlocutory decree rendered by the United States District Court of Hawaii July 21, 1925, which granted a temporary injunction forbidding petitioners— Governor, Attorney General and Superintendent of Public Instruction of that Territory—from attempting to enforce the provisions of Act 30, Special Session 1920, Legislature of Hawaii, entitled, "An Act relating to foreign language schools and teachers thereof," as amended by Act 171 of 1923 and Act 152 of 1925, and certain regulations adopted by the Department of Public Instruction June 1, 1925. The interlocutory decree was granted upon the bill and affidavits presented by both sides. No answer has been filed. In these circumstances we only consider whether the judicial discretion of the trial court was improperly exercised.

Respondents claimed below and maintain here that enforcement of the challenged Act would deprive them of their liberty and property without due process of law contrary to the Fifth Amendment. Petitioners insist that the entire Act and the regulations adopted thereunder are valid; that they prescribe lawful rules for the conduct of private foreign language schools necessary for the public welfare; also that if any provision of the statute transcends the power of the Legislature it should be disregarded and the remaining ones should be enforced.

If the enactment is subject to the asserted objections it is not here seriously questioned that respondents are entitled to the relief granted.

There are one hundred and sixty-three foreign language schools in the Territory. Nine are conducted in the

Korean language, seven in the Chinese and the remainder in the Japanese.  Respondents are members of numerous voluntary unincorporated associations conducting foreign language schools for instruction of Japanese children. These are owned, maintained and conducted by upwards of five thousand persons; the property used in connection therewith is worth two hundred and fifty thousand dollars; the enrolled pupils number twenty thousand; and three hundred teachers are employed.  These schools receive no aid from public funds.  All children residing within the Territory are required to attend some public or equivalent school; and practically all who go to foreign language schools also attend public or such private schools. It is affirmed by counsel for petitioners that Japanese pupils in the public and equivalent private schools increased from one thousand, three hundred and twenty in 1900 to nineteen thousand, three hundred and fifty-four in 1920, and that out of a total of sixty-five thousand, three hundred and sixty-nine pupils of all races on December 31, 1924, thirty thousand, four hundred and eighty-seven were Japanese.

The challenged enactment declares that the term, " foreign language school," as used therein, "shall be construed to mean any school which is conducted in any language other than the English language or Hawaiian language, except Sabbath schools."  And, as stated by the Circuit Court of Appeals, the following are its more prominent and questionable features.

" No such school shall be conducted in the territory unless under a written permit therefor from the Department of Public Instruction, nor unless the fee therefor shall have been paid as therein provided, and such permit shall be kept exposed in a prominent place at the school so as to be readily seen and read by visitors thereat.

" The fee prescribed is one dollar per pupil on the estimated average attendance of pupils at the school during

the period during which such school was conducted during the next preceding school year, or if such school was not conducted during any part of such preceding school year, then at the same rate at the estimated average attendance during the school year or unexpired part thereof in question, in which latter case the amount shall be adjusted to conform to the estimated average attendance during such year or part thereof.

" The amount of the fee shall be estimated and determined by the department from such information as it may have, and shall be payable by any person, persons or corporation conducting or participating in conducting such school; and all officers, teachers and all members of any committee or governing board of any such school, and in case such school is conducted by or for a corporation or voluntary association or other group of persons, all members or associates of such corporation, association or group shall be deemed to be participants in conducting such school. Provision is then made for the collection of the fees by suit, but that provision is not deemed material here.

"All permits must be renewed annually on the first day of September of each year and a similar fee must be paid, provided the department shall not be required to renew a permit for conducting any foreign language school, in the conducting of which there has been a violation of the terms of the Act.

"All fees collected by the department under the Act shall be paid over to the Treasurer of the Territory and the moneys so paid are appropriated to the department to be expended in enforcing and carrying out its provisions. If at any time the funds at the disposal of the department from fees previously collected or from royalties, commissions or other moneys received in connection with the publication or sale of foreign language school text-books shall make it possible to fully and effectively

carry out the provisions of the Act with the permit fees payable by the schools based on a lower rate than one dollar per pupil, the department is authorized to make such a reduction in that rate as it may deem reasonable and expedient.

" Every person conducting a foreign language school shall, not later than June 15, of each year, file with the department on forms prescribed or furnished by it a sworn list of all pupils in attendance at such school during the current school year, showing the name, sex, parents or guardians, place of birth and residence of each child.

" No person shall teach in a foreign language school unless and until he shall have first applied to and obtained a permit so to do from the department and this shall also be construed to include persons exercising or performing administrative powers at any school. No permit to teach in a foreign language school shall be granted unless and until the department is satisfied that the applicant for the same is possessed of the ideals of democracy; knowledge of American history and institutions, and knows how to read, write and speak the English language.

" It is the declared object of the Act to fully and effectively regulate the conducting of foreign language schools and the teaching of foreign languages, in order that the Americanism of the pupils may be promoted, and the department is directed to carry out the provisions of the Act in accordance with its spirit and purpose.

" Before issuing a permit to conduct a foreign language school or to teach in any such school the department shall require the applicant for such permit to sign a pledge that the applicant will, if granted a permit to teach in such a school, abide by and observe the terms of the Act, and the regulations and orders of the department, and will, to the best of his ability, so direct the minds and studies of pupils in such schools as will tend to make them

good and loyal American citizens, and will not permit such students to receive instructions in any way inconsistent therewith.

" No foreign language school shall be conducted in the morning before the school hours of the public schools or during the hours while the public schools are in session, nor shall any pupil attend any foreign language school for more than one hour each day, nor exceeding six hours in any one week, nor exceeding thirty-eight weeks in any school year; provided, however, the department may in its discretion and with the approval of the Governor, modify this provision.

" The department shall have full power from time to time to prescribe by regulations the subjects and courses of study of all foreign language schools, and the entrance and attendance prerequisites or qualifications of education, age, school attainment, demonstrated mental capacity, health and otherwise, and the text-books used in any foreign language school.

" Until otherwise provided by the department, the following regulations are in effect: Up to September 1, 1923, every pupil shall have first satisfactorily completed the American public school first grade, or a course equivalent thereto, before attending or being allowed to attend any foreign language school. Beginning September 1, 1923, and thereafter, every pupil shall have satisfactorily completed the American public school first and second grades, or courses equivalent thereto, before attending or being allowed to attend any foreign language school. Beginning September 1, 1923, and thereafter, for grades one, two and three, and beginning September 1, 1924, and thereafter, for grades four and above, all new text-books used in elementary foreign language schools shall be based upon the principle that the pupil's normal medium of expression is English and shall contain, as far as practicable, English equivalents for foreign words and idioms.

" The department is authorized to prepare, or cause to be prepared, or procure or arrange for procuring suitable text-books for the teaching of foreign languages in the foreign language schools and to enter into an agreement or agreements for the publishing and sale of the same.

"All royalties, commissions and moneys received by or on behalf of the department in connection with the publication or sale of such text-books shall be paid over to the treasurer of the territory and shall be appropriated to the department to be expended for the purposes of the Act.

" In every foreign language school no subjects of study shall be taught, nor courses of study followed, nor entrance, nor attendance qualifications required, nor text-books used, other than as prescribed or permitted by the department. The latter regulations were only effective until superseded in whole or in part by others made by the department, and some such were thereafter made, but they are not deemed material to our present inquiry.

" The department has power to appoint one or more inspectors of foreign language schools and to pay the salary and necessary expenses therefor; such inspectors and other duly authorized agents of the department shall have the right freely to visit such foreign language schools and to inspect the buildings, equipment, records and teaching thereof and the text-books used therein.

" If the department shall at any time become satisfied that any holder of a permit to conduct a foreign language school or to teach therein does not possess the qualifications required by the Act, or shall have violated or failed to observe any of the provisions of the Act or of the regulations or orders of the department, the department may then and thereupon revoke the permit theretofore granted and the same shall thereupon be and become null and void.

"Any person who shall conduct or participate in conducting a foreign language school or who shall teach in

a foreign language school contrary to the provisions of the Act, or who shall violate or participate in violating any of the provisions thereof, or any of the regulations or orders of the department, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not to exceed $25, and each day's violation shall be deemed a separate offense.

" The Act further provides that if any section or part thereof is declared unconstitutional or invalid by the courts, the same shall not affect the validity of the Act as a whole, or any part thereof which can be given effect without the part so decided to be unconstitutional or invalid."

On June 1, 1925, the Department of Public Instruction adopted, and the Governor approved, certain regulations which undertook to limit the pupils who might attend foreign language schools to those who regularly attended some public school or approved private school, or had completed the eighth grade, or were over fourteen years of age. Also, to designate the text-books which foreign language schools should use in their primary grades.

The affidavit of T. Iwanaga, in support of motion for temporary injunction, states—

" That in the schools referred to in said bill, which are conducted for each grade for one hour for each school day, nothing contrary to American history and American institutions and principles of democracy is taught, the instruction being confined to the speaking, reading and writing of the Japanese language; . . .

" That in the schools represented by plaintiffs there are about twelve thousand four hundred pupils and said schools employ about one hundred ninety-two teachers; that said teachers are paid and said schools are maintained from voluntary contributions and from the fees of the children attending said schools; that the provi-

sions of said Act 152 of the Session Laws of 1925 are so drastic that the parents of children will be afraid to pay tuition fees and other persons will be afraid to contribute to the funds of said schools lest they be subjected to the pains and penalties provided in said Act, and that, therefore, unless immediate relief is afforded by this Honorable Court, the said schools will be unable to pay the teachers' salaries and the expenses of conducting said schools and the property of plaintiffs in said schools will be utterly destroyed."

An affidavit of the Attorney General describes the litigation which has arisen under the legislation concerning foreign language schools. He does not disavow purpose to enforce all provisions of the challenged Act and regulations. An affidavit by the Superintendent of Public Instruction advances the opinion that respondents could pay the prescribed fees, that compliance with the foreign language school laws would not prevent the operation of schools which conduct kindergartens, and that elimination of the kindergartens would not materially affect them. Also, he says—.

" That instruction in said Japanese Language Schools is not and cannot be confined to the speaking, reading and writing of the Japanese language, but extends to many subjects and even in so far as it is intended to have for its object the speaking, reading and writing of said language, the teaching of that is and must be largely through the medium of stories whether of history or fiction and in other ways than the mere teaching of letters and words and sentences. . . .

" That, in the opinion of this affiant, the parents of children will not because of the provisions of said Act 152 be afraid to pay tuition fees nor will other persons be afraid to contribute to the funds of such schools and this affiant denies that said schools will, unless immediate relief is afforded by this Honorable Court, be unable to

pay the teachers' salaries and the expenses of conducting said schools, and denies that the property of plaintiffs in said schools will be utterly or at all destroyed."

The foregoing statement is enough to show that the school Act and the measures adopted thereunder go far beyond mere regulation of privately-supported schools where children obtain instruction deemed valuable by their parents and which is not obviously in conflict with any public interest. They give affirmative direction concerning the intimate and essential details of such schools, intrust their control to public officers, and deny both owners and patrons reasonable choice and discretion in respect of teachers, curriculum and text-books. Enforcement of the Act probably would destroy most, if not all, of them; and, certainly, it would deprive parents of fair opportunity to procure for their children instruction which they think important and we cannot say is harmful. The Japanese parent has the right to direct the education of his own child without unreasonable restrictions; the Constitution protects him as well as those who speak another tongue.

Upon the record and the arguments presented, we cannot undertake to consider the validity of each separate provision of the Act and decide whether, dissociated from the others, its enforcement would violate respondents' constitutional rights. Apparently all are parts of a deliberate plan to bring foreign language schools under a strict governmental control for which the record discloses no adequate reason. Here, the enactment has been defended as a whole. No effort has been made to discuss the validity of the several provisions. In the trial court the cause proceeded upon the theory that petitioners intended to enforce all of them.

The general doctrine touching rights guaranteed by the Fourteenth Amendment to owners, parents and children in respect of attendance upon schools has been announced

in recent opinions. *Meyer* v. *Nebraska,* 262 U. S. 390; *Bartels* v. *Iowa, id.* 404; *Pierce* v. *Society of Sisters,* 268 U. S. 510. While that amendment declares that no *State* shall " deprive any person of life, liberty or property without due process of law," the inhibition of the Fifth Amendment—" no person shall . . . be deprived of life, liberty or property without due process of law "— applies to the federal government and agencies set up by Congress for the government of the Territory. Those fundamental rights of the individual which the cited cases declared were protected by the Fourteenth Amendment from infringement by the States, are guaranteed by the Fifth Amendment against action by the Territorial Legislature or officers.

We of course appreciate the grave problems incident to the large alien population of the Hawaiian Islands. These should be given due weight whenever the validity of any governmental regulation of private schools is under consideration; but the limitations of the Constitution must not be transcended.

It seems proper to add that when petitioners present their answer the issues may become more specific and permit the cause to be dealt with in greater detail.

We find no abuse of the discretion lodged in the trial court. The decree of the Circuit Court of Appeals must be

*Affirmed.*