STEELE *v.* SEXTON.

1. CERTIORARI—MANDAMUS—FINDING OF FACT NOT REVIEWABLE.
    On certiorari to review denial of writ of mandamus, finding of fact by court below, supported by evidence, may not be reviewed.

2. MANDAMUS—SCHOOLS AND SCHOOL DISTRICTS—VALIDITY OF STATUTE.
    Mandamus is proper remedy to test validity of action of school authorities in withholding credits from high school pupil violating general school law (chapter 33, pt. 2, Act No. 319, Pub. Acts 1927) prohibiting membership in high school fraternities, sororities, etc., by high school pupils.

3. STATUTES—TITLE—CONSTITUTIONAL LAW—SCHOOLS AND SCHOOL DISTRICTS—HIGH SCHOOL FRATERNITIES.
    Subject-matter of chapter 33, pt. 2, Act No. 319, Pub. Acts 1927, prohibiting membership in high school fraternities, sororities, etc., by high school pupils is embraced in title of act, and therefore act is not unconstitutional.

---

Constitutionality of law forbidding students affiliating with secret society, see annotation in 7 L. R. A. (N. S.) 352; L. R. A. 1915D, 588.

As to regulations as to school or college fraternities, see annotation in 27 A. L. R. 1074.

4. CONSTITUTIONAL LAW—CRUEL AND UNUSUAL PUNISHMENT—SCHOOLS AND SCHOOL DISTRICTS.

Withholding credits from high school pupil violating general school law prohibiting membership in high school fraternities, sororities, etc., by high school pupils is not cruel and unusual punishment within meaning of Constitution.

5. SAME—"DUE PROCESS"—EQUAL PROTECTION OF LAW.

Withholding credits from high school pupil violating general school law prohibiting membership in high school fraternities, sororities, etc., by high school pupils does not violate "due process" clause of Fourteenth Amendment to Federal Constitution, nor is pupil thereby denied equal protection of laws.

6. SAME—CLASS LEGISLATION.

Provision of general school law prohibiting membership in high school fraternities, sororities, etc., by high school pupils is not class legislation within inhibition of Constitution.

7. SCHOOLS AND SCHOOL DISTRICTS—HIGH SCHOOL FRATERNITIES—VALIDITY OF STATUTE.

General school law (Act No. 319, Pub. Acts 1927, chap. 33, pt. 2) prohibiting membership in high school fraternities, sororities, etc., by high school pupils is valid.

CLARK, McDONALD, and POTTER, JJ., dissenting.

Certiorari to Ingham; Collingwood (Charles B.), J. Submitted October 21, 1930. (Calendar No. 35,221.) Decided January 7, 1931.

Mandamus by Verne Steele, Jr., by next friend, to compel J. W. Sexton, superintendent of public schools of city of Lansing, Michigan, and others to grant school credits. Plaintiff reviews denial of writ by certiorari. Affirmed.

*Joseph W. Planck* (*Carl H. Reynolds,* of counsel), for plaintiff.

*Warner & Watson* (*J. E. Converse,* City Attorney, of counsel), for defendants.

WIEST, J. By writ of certiorari we here review denial of a writ of mandamus in the circuit court.

Plaintiff, while a student in the central high school of the city of Lansing, became a member of an association or student fraternity styled "Phi Epsilon." The general school law, chapter 33, pt. 2, Act No. 319, Pub. Acts 1927 (2 Comp. Laws 1929, §§ 7664–7667), made it unlawful for him to join or belong to any school fraternity or student secret society, gave the school board power to suspend or expel a violator, and declared it illegal for school officials to give an offender credit for a subject pursued or to graduate such an one. Plaintiff was in the senior class. The school officers found plaintiff guilty upon his own confession, permitted him to pursue his studies, but refused him credits and a graduation diploma. In the circuit court plaintiff was denied a writ of mandamus commanding the defendants to award him school credits and a graduation diploma. Testimony was taken in the circuit court and the court found:

"That Verne Steele admitted before the superintendent of schools and the principal of the high school that he was a member of the Phi Epsilon fraternity; that he knew that the fraternity was being maintained contrary to the said law and against the rules and regulations of the school authorities of the city of Lansing; that he knew the penalties for being affiliated with such fraternity."

This finding, having support of evidence, cannot in this proceeding be reviewed.

It was claimed in the circuit, and is claimed here by defendants, that plaintiff had no remedy by writ of mandamus. Mandamus is a proper remedy. *Valentine* v. *Independent School District,* 187 Iowa, 555 (174 N. W. 334, 6 A. L. R. 1525).

Counsel for plaintiff contend that:

"The statute applies only to secret societies and petitioner was not a member of a secret society."

This is answered by the following provision of the statute:

"A public school fraternity, sorority, or secret society, as contemplated by this act, is hereby defined to be any organization whose active membership is composed wholly or chiefly of pupils of the public schools of this State and perpetuating itself by taking in additional members from the pupils enrolled in the public schools on the basis of the decision of its membership rather than upon the right of any pupil who is qualified by the rules of the school to be a member of and take part in any class or group exercises," etc. (2 Comp. Laws 1929, § 7664).

Counsel for plaintiff contend that the mentioned statute is unconstitutional and void for the following reasons:

"1. The subject-matter of chapter 33 is not germane to and is not embraced in and covered by the title of Act No. 319.

"2. The withholding of school credits earned and the prohibition as to graduation of any person who shall violate the act constitutes 'cruel and unusual punishment.'

"3. Relator is deprived of 'liberty' without due process of law.

"4. Relator is deprived of 'property' without due process of law.

"5. Relator is denied the 'equal protection of the laws.' "

The title to the act embraced legislation for the establishment and regulation of public schools, inclusive of rights, powers, duties, and privileges, to-

gether with penalties for violations. The purpose actuating the legislature is found in the following declaration in the act:

"Every such fraternity, sorority, and secret society as herein defined is declared an obstruction to education, inimical to the public welfare, and illegal."

There is no merit in the first point.

Plaintiff was not suspended or expelled. He has not been deprived of education in the high school, for he has been permitted to take the course, but only denied credits for the last semester and graduate diploma. School credits involve deportment, subordination to discipline, and obedience to rules and regulations established by the legislature for the promotion of the best interests of the public schools and good order therein. Plaintiff joined the fraternity in defiance of the law, exhibits no contrition, and now wants his will, and not the law, to prevail. Loss of right to school credits and a graduate's diploma, based upon a wilful violation of the statute does not, by any stretch of imagination, constitute cruel and unusual punishment.

The remaining three reasons invoke the Fourteenth Amendment to the Federal Constitution.

It was well said in *University of Mississippi* v. *Waugh,* 105 Miss. 623, 633 (62 South. 827, L. R. A. 1915 D, 588, Ann. Cas. 1916 E, 522):

"The Fourteenth Amendment to the Constitution of the United States was never intended to act as an accomplice to any young man who wanted to take advantage of the gratuitous advantages offered the youths to obtain an education and yet refuse to obey and submit to the disciplinary regulations enacted by the legislature for the welfare of the institutions of learning. The right to attend the educational in-

stitutions of the State is not a natural right. It is a gift of civilization, a benefaction of the law. If a person seeks to become a beneficiary of this gift, he must submit to such conditions as the law imposes as a condition precedent to this right. The act in question is not class legislation. It is quite the reverse, and seeks to destroy the possibility of the existence of any class at the educational institutions. No State or Federal Constitution is violated by this act in any way. Complainant is not deprived of any constitutional right, unless complainant can be said to have a constitutional right to breach the discipline of the school and set at naught the laws of the State.''

That case, so far as it involved the Fourteenth Amendment, was reviewed in *Waugh* v. *University of Mississippi*, 237 U. S. 589 (35 Sup. Ct. 720), and affirmed. The court stated among other things:

''It is said that the fraternity to which complainant belongs is a moral and of itself a disciplinary force. This need not be denied. But whether such membership makes against discipline was for the State of Mississippi to determine. It is to be remembered that the university was established by the State and is under the control of the State, and the enactment of the statute may have been induced by the opinion that membership in the prohibited societies divided the attention of the students and distracted from that singleness of purpose which the State desired to exist in its public educational institutions.''

Plaintiff also contends that the statute ''is class legislation in that it unfairly and unreasonably discriminates against him and other public school students and in favor of pupils in private, parochial, and denominational schools.'' There is no merit in this.

An examination of reported cases discloses that for many years educators, in behalf of educational efficiency, have endeavored to suppress membership of pupils in school fraternities. By the great weight of authority the statute is valid. See *Wilson* v. *Board of Education,* 233 Ill. 464 (84 N. E. 697, 15 L. R. A. [N. S.] 1136, 13 Ann. Cas. 330); *University of Mississippi* v. *Waugh, supra; Waugh* v. *University of Mississippi, supra; Sutton* v. *Board of Education,* 306 Ill. 507 (138 N. E. 131); *Wayland* v. *Hughes,* 43 Wash. 441 (86 Pac. 642); *Lee* v. *Hoffman,* 182 Iowa, 1216 (166 N. W. 565, L. R. A. 1918 C, 933); *Bradford* v. *Board of Education,* 18 Cal. App. 19 (121 Pac. 929).

The determination in the circuit court is affirmed, with costs to defendants.

BUTZEL, C. J., and SHARPE, NORTH, and FEAD, JJ., concurred with WIEST, J.

POTTER, J. (*dissenting*). I dissent from the opinion of Justice WIEST. It is probably true this case is not, in itself, important, but the principles involved are far-reaching. We have those who believe the individual belongs to the State, and those who believe the State and its government belong to the people. The old conception that the king could do no wrong, was the source of sovereignty, and the individual subject possessed only those rights countenanced by sufferance of arbitrary power was shot to pieces on the battle-fields of the Revolution by those who maintained that governments derive their just powers from the consent of the governed.

In *Pierce* v. *Society of Sisters,* 268 U. S. 510 (45 Sup. Ct. 571, 39 A. L. R. 468), involving the validity of the compulsory school law of Oregon, it was contended that as to minors the State stands in the

position of *parens patriæ* and may exercise unlimited control over their conduct and the liberty and right of those who assume to deal with them. This was the dream of Plato's Ideal Commonwealth, the basis of the Spartan system of state socialism, German Kultur, and the Marxian philosophy upon which modern Russian sovietism is built, and is the basis of the reasoning to support the law here involved. The court did not uphold this contention, but said:

"The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."

In *Meyer* v. *State of Nebraska,* 262 U. S. 390 (43 Sup. Ct. 625, 29 A. L. R. 1446), it is said:

"For the welfare of his Ideal Commonwealth, Plato suggested a law which should provide: 'That the wives of our guardians are to be common, and their children are to be common, and no parent is to know his own child, nor any child his parent. * * * The proper officers will take the offspring of the good parents to the pen or fold, and there they will deposit them with certain nurses who dwell in a separate quarter; but the offspring of the inferior, or of the better when they chance to be deformed, will be put away in some mysterious, unknown place, as they should be.' In order to submerge the individual and develop ideal citizens, Sparta assembled the males at seven into barracks and intrusted their subsequent education and training to official guardians. Although such measures have been deliberately approved by men of great genius, their ideas touching the relation between individual and State were wholly different from those upon which our institutions rest; and it hardly will be affirmed that any legislature could impose such restrictions upon the people of a State without doing violence to both letter and spirit of the Constitution."

The Michigan public school system, founded on that of Prussia, is rooted in the Constitution and laws of the State. It is made the duty of the legislature to continue a system of primary schools whereby education of pupils shall be provided without charge for tuition; children between the ages of 7 and 16 years shall be in attendance, and a parent who neglects or refuses to cause the attendance of his children may be prosecuted and convicted of a misdemeanor.

Chapter 33 of the school code provides (2 Comp. Laws 1929, §§ 7664–7667):

"Section 1. It shall be unlawful for any pupil of the elementary school and the high school of the public schools or any other public school of the State comprising one or all of the twelve grades in any manner to organize, join, or belong to any high school fraternity, sorority, or any other secret society. A public school fraternity, sorority, or secret society, as contemplated by this act, is hereby defined to be any organization whose active membership is composed wholly or chiefly of pupils of the public schools of this State and perpetuating itself by taking in additional members from the pupils enrolled in the public schools on the basis of the decision of its membership rather than upon the right of any pupil who is qualified by the rules of the school to be a member of and take part in any class or group exercises designated and classified according to sex, subjects required by the course of study, or program of school activities fostered and promoted by the school board and superintendent of schools for city and graded schools and by the school board and county commissioner of schools for all schools not employing a superintendent of schools. Every such fraternity, sorority, and secret society as herein defined is declared an obstruction to education, inimical to the public welfare, and illegal.

"SEC. 2. It shall be the duty of each school board to prohibit the organization or operation of such fraternity, sorority, or other secret society within the school system over which it has jurisdiction and it may suspend or expel from the school or schools under its control any and all pupils who shall be or remain members of, or who shall join or promise to join, or shall become pledged to become members of, or who shall solicit any other person to join or promise to join, or be pledged to join, any public school fraternity, sorority, or secret society declared by section one hereof to be illegal.

"SEC. 3. It shall be illegal to give credit for a subject pursued, to promote from grade to grade or to graduate any person who shall knowingly violate the provisions of this act, or having violated it shall persist in its violation. Any credit given contrary to the provisions hereof shall not be accepted by any other school or educational institution within this State.

"SEC. 4. Any school official or member of any school board or other person violating or knowingly permitting or consenting to any violation of the provisions of this act shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars for each offense."

There is no claim the pupil asking relief did not attend the public schools, did not complete the course of study prescribed therein, is not, so far as educational qualifications are concerned, entitled to graduate, in any event, entitled to credit for the work he has done or that his fraternalistic activity interfered in any way with his education or with his study. Under the school system pupils are graded and classified. When a prescribed subject is passed a pupil is entitled to credit therefor. Intelligence,

ability, and scholarship may, in some cases, be made the basis of admission to our colleges, normal schools, and universities, but the usual and ordinary way is by presentation of certified credits from a recognized high school or other accredited preparatory school. These school credits are not an infallible index to intelligence, knowledge, or character, but they are the recognized legal evidence and practical test, in our educational system, of the right to enter institutions of so-called higher learning.

The respondents have no personal interest in this case. They seek to justify their conduct under the statutes above quoted. They claim the right to deny to a pupil who has the requisite educational qualifications the right of graduation and the right to credit for his educational accomplishments, the right to the beneficial use of what he has earned, solely because it is claimed he belongs to or has belonged to a high school fraternity. They are entirely within their rights, if this legislation is valid.

This legislation goes beyond the legitimate sphere of State regulation, attempts by legislative fiat to proscribe certain social activities and declare them an obstruction to education, inimical to public welfare, and illegal. It authorizes the board of education to expel pupils who belong to such societies, declares it illegal, and hence a misdemeanor, for the board of education to give credit for a subject pursued, promote from grade to grade, or graduate any person, who shall knowingly belong to such social organization. If this legislation is valid, then it is competent to provide by law that students in our colleges and universities shall not belong to the Masons, Knights of Columbus, Odd Fellows, Elks or any other secret fraternal society; to say by legislative declaration that those who attend the

Methodist, Catholic, Presbyterian, Congregational, or other churches may not be given credit for studies pursued in the public schools, or may not attend them at all, or be graduated therefrom; to declare that those who attend a Sunday school maintained by any of these or any other religious organizations, shall not be entitled to the ordinary benefits of our public educational institutions. The legislature may deny education, or the evidences of public instruction, to those who play football, baseball, billiards, golf, cards, checkers, tennis, croquet, or authors. If the legislature may proscribe one social activity or one kind of social organization, it may in its discretion proscribe any other. If the State cannot do it because of the Fourteenth Amendment to the Constitution of the United States, the Federal government cannot because of the Fifth Amendment. *Farrington* v. *Tokushige,* 273 U. S. 284 (47 Sup. Ct. 406).

The State has broad powers, but parents still have some control over their children, who are not yet wards of the State, as in Sparta or Soviet Russia. The State may well prescribe that pupils shall attend public or private schools, shall not be raised in ignorance, shall have opportunities for education, but neither the legislature nor the school authorities have a right to dictate or interfere with the activities of the pupil when not in school. He is then under parental care. As said in *State, ex rel. Stallard,* v. *White,* 82 Ind. 278 (42 Am. Rep. 496):

"If mere membership in any of the so-called Greek fraternities may be treated as a disqualification for admission as a student, in a public school, then membership in any other secret or similar society may be converted into a like disqualification,

and in this way discriminations might be made against large classes of the inhabitants of the State, in utter disregard of the fundamental ideas upon which our entire educational system is based.''

If the legislation here involved is constitutional, then it is competent for the legislature to prescribe that pupils in the public schools, colleges, normal schools, and universities shall not attend theaters or prayer meetings, dances or public worship.

It is the policy of our law to promote public education, but there are fields of individual liberty, protected by the Constitution, into which the State may not enter. Such constitutional regulations are made to protect the minority against the vindictiveness or caprice of the majority, and the minority one day may be the majority the next. Public education has its legitimate sphere, but the child, except when in school or on his way to or from there, is not under control of school authorities. The board of education ought not to be constituted social snoopers; they cannot be authorized by law to control the activities of pupils out of school which activities in no way interfere with the educational activities of the pupil in school. The credits which a pupil has earned are valuable. These credits are property. This law arbitrarily interferes with the sphere of individual liberty guaranteed by the Constitution, seeks to establish unjust, unreasonable, and arbitrary rules of social conduct, and deprives the pupil and his parents of property in violation of the Constitution of this State and of the Fourteenth Amendment of the Constitution of the United States. It is invalid. The writ of mandamus should issue.

CLARK and McDONALD, JJ., concurred with POTTER, J.