## HUGHES et al. v. CADDO PARISH SCHOOL BOARD et al.

### Civil Action No. 1165.

District Court, W. D. Louisiana, Shreveport Division.

Nov. 3, 1944.

Judgment Affirmed Jan. 29, 1945.

See 65 S.Ct. 562.

Otis W. Bullock, of Shreveport, for complainants.

Edwin L. Blewer, State Dist. Atty., of Shreveport, and R. H. Lee, Sp. Asst. Atty. Gen., for defendants.

Before LEE, Circuit Judge, and DAWKINS and PORTERIE, District Judges.

PORTERIE, District Judge.

We will consider first the motion filed by the defendants to dismiss the petition of complainant for the lack of jurisdiction. The issue to be decided is whether or not we have been presented with a federal question.

The complaint is by the four parents of children attending the Byrd High School of Shreveport, Louisiana, who are members of national Greek-letter fraternities, chapters of which have been in public existence at this school for a number of years. Act No. 342 of the Legislature of Louisiana for 1944, granting to the various parish school boards the power and authority to abolish high school fraternities and sororities, is attacked as being unconstitutional, null, and void for the following reason:

"(1) Said Statute is violative of the 14th Amendment to the Constitution of the United States in that it deprives plaintiffs and their children of vested rights without due process of law, abridges their privileges and immunities, deprives them of the equal protection of the laws, and attempts to grant special privileges to a class, limiting the privilege of free education to students who are not members of Greek-letter fraternities and sororities."

There are five other reasons of unconstitutionality alleged under the constitution of the state of Louisiana; and, finally, a seventh reason, wherein both constitutions, federal and state, are involved:

"(7) Said Statute, as originally introduced in the House of Representatives, expressly declared that high school fraternities were inimical to the public good and to the welfare of the public high schools of Louisiana, but this language was stricken from said Act by the House of Representatives: that the Legislature, having failed to find said organizations detrimental to the general welfare, and, on the contrary, having in effect found otherwise, said Statute has no legal basis on which to rest, and con-

stitutes a violation of the inherent personal rights guaranteed to every citizen by the State and Federal Constitutions."

The complaint further alleges that:

"Under date of September 6, 1944, at its regular session, the Caddo Parish School Board, proceeding under said Act No. 342 of 1944 of the Legislature, adopted a resolution abolishing high school fraternities and sororities, and making it the duty of the principals of the various high schools in the Parish of Caddo to suspend or expel from said schools any pupil who might be or remain a member of any high school fraternity of sorority, a copy of said resolution being annexed hereto and made a part hereof for the purpose of showing rem ipsam."

Then the complaint further states, in Article XIV, that:

"The resolution of the Caddo Parish School Board adopted on September 6th, 1944, is unconstitutional, null and void because said School Board received no authority whatsoever to adopt said resolution by virtue of Act No. 342 of 1944, said Act being likewise unconstitutional and null; that said resolution is also illegal, unconstitutional, null and void for the following reasons, to-wit:

"(1) Said resolution is violative of the 14th Amendment to the Constitution of the United States for the same reasons given above in connection with the illegality of Act 342 of 1944."

Also, this Article XIV lists six nullities under the state constitution.

The rest of the complaint has the usual necessary allegations as to the necessity for a temporary restraining order, to be followed later by a hearing as to whether or not a temporary injunction would issue, and to finally culminate in a permanent injunction.

The pupils involved in this case are above the age limit of the state law which makes school attendance compulsory. Act No. 117 of 1922.

We dispose of all the questions raised as to the want of state constitutionality by saying that in a state suit all these attacks based on violations of the state constitution were refuted by an oral judgment in the state district court; a rule nisi for a temporary injunction was denied, and at the same time the temporary restraining order previously issued was recalled. Writs were applied for to the supreme court on the relation of the original complainants, and the constitutionality of Act No. 342 of 1944 and of the resolutions adopted by the Caddo Parish School Board on November 11, 1943, and on September 6, 1944, was put at issue.

The plaintiff's petition, the defendant's original and amended answers, the resolution of the Caddo Parish School Board of September 6, 1944, subsequent to the effective date of the Act of the Legislature, as well as the resolution of the board adopted November 3, 1943, prior to the passage of the Act, were all made a part of what was placed before the supreme court. The supreme court of the state unanimously refused the writs sought with the statement, "No error of law in the ruling complained of." State of Louisiana ex rel. O. G. Collins et al. v. Caddo Parish School Board et al., No. 57687, decided October 6, 1944.

So, it is our opinion that the state court of final arbitrament having ruled that the Act and the two local school board resolutions were not in violation of the state constitution, the whole attack based on state grounds of want of constitutionality is settled for us.

It is true that the case is still in the state court to be heard on its merits at to whether or not a permanent injunction is to issue, but what we have just ruled is permitted because of what was actually sent to, heard by, and ruled upon by the supreme court.

But, by a peculiar happening, the supreme court has approved, in detail, the constitutionality of the action of the school authorities in the present case, for in the case of State ex rel. Rathe v. Jefferson Parish School Board, 19 So.2d 153, at page 166, when only the first resolution of the school board, that dated November 3, 1943, was extant, it said:

"It is, therefore, obvious that even if the above quoted provisions were not in the statute, the party claiming an adverse legal right may resort to court for redress. For instance, in the case of Cook et al. v. Caddo Parish School Board et al., (No. 37,394 of the docket of this Court, wherein writs of certiorari, prohibition and mandamus were refused by us on the ground that the judgment was correct), there was no specific provision in the School Board Law (Act 100 of 1922, as amended) granting to the plaintiffs the right to appeal to a court of appropriate jurisdiction, yet the complainants, exercising their constitutional rights,

did appeal or resort to the courts and had their case considered. There the School Board, after an informal public hearing, by vote of ten of its seventeen members, passed a resolution making students in the High School ineligible to participate in activities for extra-curricular honors and recognition if they were members of Greek letter fraternities and sororities, which had no connection whatsoever with the public schools. The reasons assigned by the Board for its action were that membership in these fraternities had a tendency to make the students undemocratic, snobbish and clannish and interfered with the proper maintenance of school interest and scholastic attainments. The members of these fraternities and their parents vigorously protested against the Board's resolution and sought relief in the courts on the ground that the School Board's action went beyond the power and authority granted to it by the statute and was an illegal and unconstitutional deprivation of the rights of these students and parents in matters outside of public school functions. The trial judge granted a rule to show cause why a preliminary injunction should not be issued against the School Board. After a hearing he refused to issue an injunction for the reasons that the School Board had acted in good faith after a hearing upon substantial evidence and that the court would not substitute its judgment for that of the administrative and executive board performing statutory duties. The judge said:

" 'There is nothing more firmly established in law than the principle that, within the limits of their authority, the power and discretion of legally created governing boards is supreme. Their wisdom or good judgment cannot be questioned by the courts. Members of these boards are appointed or elected because of their peculiar fitness for the post. Judges are elected because of their legal knowledge and ability. They are not experienced in the business affairs of Parishes and municipalities, the construction of levees or the conduct of a public school system. A presumption of legality and regularity attaches to the action of all government boards. It is only when it is clearly shown that the action of such a board is beyond its authority or is arbitrary, unreasonable, or fraudulent that a court is justified in interfering.'

"In short, the court concluded that there was no invasion or deprivation of any legal right of the complainants and that the

Board had acted within the scope of its power."

The items of the complaint left for us to consider, therefore, are those wherein there are alleged violations of the fourteenth amendment to the Constitution of the United States.

We now proceed to that phase of the case.

The Supreme Court of the United States has benefited us materially and fully by what it said in the case of Waugh v. Board of Trustees of the University of Mississippi, 237 U.S. 589, 35 S.Ct. 720, 59 L.Ed. 1131. It will be our purpose to make a comparative analysis of the facts in the instant case and the facts of the Waugh case, so as to reach an answer one way or the other.

In setting out the facts of the Waugh case, we have prepared ourselves into a proper understanding of them by reading the same case when it was in the supreme court of the state of Mississippi under the title of Board of Trustees v. Waugh, 105 Miss. 623, 62 So. 827, L.R.A.1915D, 588, Ann.Cas.1916E, 522.

For the sake of brevity, after verification, however, we conclude that basically the general object and purpose of the Act of the state of Mississippi were the same as those of the Act of the state of Louisiana. To set out some of the facts of the Waugh case, we quote from page 721 of 35 S.Ct.:

"Complainant applied for admission into the law department of the University, but was refused admission because he declined to sign the pledge required, though he alleged that he was otherwise eligible for admission under the laws of the state and of the United States; that he has never been a member of any of the prohibited fraternities organized among the students of the University or located at the University, and, though he is affiliated with and pays dues to the chapter of the Kappa Sigma Fraternity at Millsaps College, if admitted as a student to the University of Mississippi, he has no intention or purpose of encouraging the organization or continuance of any of the prohibited fraternities, or of affiliating with or paying dues to any at the University."

To continue with the facts, we quote another part of the Waugh case, 35 S.Ct. at page 722:

"The statute is universal in its prohibitions. None of the named societies or others 'of whatever name, or without name,'

are permitted to exist in the University; and no student who is a member of any of them is permitted to receive or compete for class honors nor contend for prizes or medals. To secure this result one of the orders of the trustees was directed.

"But, by another order of the trustees, a distinction is made. By it it is provided that the statute is not to be construed 'to apply to students already entered, and who conduct themselves with that decorum always expected of Southern gentlemen.' This order is assailed by plaintiff as 'a clear discrimination between the "ins" and "outs," between those who were, at the time the statute was enacted, students in the University, and those who were not on that date members of the student body, and who might desire to be admitted as such.' The contention is made much of by counsel and the order is denounced as irrational and arbitrary. But counsel overlook that it is an obvious principle of construction, and sometimes of justice, that laws are not to be construed retrospectively. The trustees regarded and followed the principle, and left undisturbed the students already in the University, admonishing them, however, that their honor would be regarded as pledged not to abuse the right or the indulgence. And whether it was a right or an indulgence,—whether required by the statute or accorded by the trustees,—it was based on an obvious and rational distinction, and the supreme court sustained its competence."

To complete the facts of the Waugh case, we quote from it, when in the supreme court of Mississippi, supra, at page 828, 62 So.:

"The enforcement of the act is committed to the rules prescribed by the trustees and faculties, and it is made their imperative duty, under penalty of removal from office, to see that the act is enforced. In order to carry out the duty which the Legislature imposed upon them of enforcing the act, the trustees, by an order placed upon their minutes at the September meeting in 1912, made it a condition precedent to the right of any student to enter the University that each student making an application for admission should be required to sign the following statement: 'I hereby state and affirm upon my honor that I am not now pledged to become a member of any of the Greek letter fraternities, societies or sororities named in the Senate Bill 227 of the Laws of Mississippi, 1912, pages 192 and 193, chapter 177, and that I have not become a member of any of said fraternities, sororities or societies within the sixty days preceding the opening of the session of 1912–13. I further pledge and promise not to join any such organizations while I am a student of the University, and that I will not aid or abet or encourage the organization or perpetuation of any such orders or societies while I am a student of the University. I further promise and pledge that I will not apply for nor accept any scholarship or medal, or in any way be the beneficiary of any student's self-help fund, or accept any position in the University while I am a student therein, if I fail to keep or violate any of the provisions of the foregoing pledge. I furthermore promise and pledge to regard this obligation as binding between the sessions of 1912–13 and 1913–14, and that it shall be my purpose and constant endeavor to so act that no word or deed of mine could be even remotely construed as being violative to the letter and the spirit of what is known as the "Anti-Fraternity Bill," passed by the last Legislature and approved by the Governor February 27, 1912.' "

Waugh applied to the chancellor of the University for admission to the law school in November, 1912, when the rules for admission had been prescribed by the Board of Trustees and faculty of the University since the September before. He refused to sign the pledge.

Stipulated facts in the instant case are that the 1943-1944 session of the Caddo Parish School Board closed on June 2, 1944, and that the 1944–1945 school session of the Caddo Parish public schools opened on September 11, 1944. We make a strong point of the fact that the resolution of the Caddo Parish School Board was passed on September 6, 1944, before any student, fraternity member or not, of the public schools of Caddo Parish, Byrd High included, could have been enrolled.

The only difference in the two cases appears in the fact that the trustees of the University, though authorized under the Act to dismiss those who were already members of the Greek-letter fraternities at the University of Mississippi before the passage of the Act, provided that any student who is a member of any of the prohibited societies, may, upon his entrance to any of the schools, " 'file with the chancellor, president or superintendent, as the case may be, an agreement in writing that he will not, during his attendance at said

school, affiliate with same, nor attend their meetings, nor in any wise contribute any dues or donations to them, and, thereafter so long as such agreement is complied with in good faith, such student shall not be subjected to the restrictions created by this section.' " 35 S.Ct. 721.

Additionally, quoting again from the facts in the Waugh case, again at page 721:

" * * * subsequent to the enactment of the statute the board of trustees of the University adopted an order which recited that the board desired it to be understood that the statute was 'not to be construed to apply to students already entered, and who conducted themselves with that decorum always expected of Southern gentlemen.' "

On the other hand, in the instant case, the provisions of Section 2 of the Louisiana Act, to the effect that " * * * it shall be the duty of the principals of such parish high schools * * * to suspend or expel * * * any pupil * * * *who shall be or remain a member of* * * * any such public high school fraternity or sorority or secret society, as defined herein" (italics ours), are to be enforced.

This is affirmed by the language of the second resolution of the Caddo Parish School Board, dated September 6, 1944:

" * * * that it does hereby avail itself of the additional remedies set out in the provisions of Act 342 of 1944 and accordingly it does hereby declare that fraternities and sororities and secret societies, as defined in said Act 342 of 1944, are hereby prohibited in the high schools of Caddo Parish, Louisiana, and the principal of each and every high school in this Parish is hereby authorized and directed to enforce this resolution and said Act 342 of 1944 in accordance with the terms and provisions of said legislative act."

The Act of the Legislature and the resolution of the Caddo Parish School Board of September 6, 1944, existed and were the law before any pupil of Byrd High School entered for the 1944–1945 session. So, a prospective student already a member of one of the high school secret societies has to comply with and obey Section 2 of Act No. 342 of 1944.

Thus, the instant situation is exactly the same in principle as with the student Waugh in Mississippi when the state required him, already a member of a Greek-letter fraternity, though at another college, to renounce his allegiance to and affiliation with such fraternity. The United States Supreme Court held that Waugh could be so obliged without denying him due process of law or his privileges or immunities as a citizen of the United States under the fourteenth amendment.

In the instant case the student is a member of the fraternity chapter in Byrd High School where entrance and enrollment are sought. Because of the disciplinary measures which the State Legislature and the Caddo Parish School Board are seeking to establish in the schools under their respective police authority, this student may be legally compelled to comply with these measures.

The manner of application of the law becomes absolutely uniform—there is not even the semblance of any discrimination as was alleged to exist in the Waugh case, and which was pressed before and considered by the Supreme Court of the United States.

And, finally, and determinatively, is not the present plan of the school authorities to have no one a student at the High School a member of any secret society, the best and most efficient manner of curing the situation?

Because of the strikingly similar facts in the two cases, we adopt the following principles of the Waugh case from the Supreme Court of the United States:

"It is said that the fraternity to which complainant belongs is a moral and of itself a disciplinary force. This need not be denied. But whether such membership makes against discipline was for the state of Mississippi to determine. It is to be remembered that the University was established by the state, and is under the control of the state, and the enactment of the statute may have been induced by the opinion that membership in the prohibited societies divided the attention of the students, and distracted from that singleness of purpose which the state desired to exist in its public educational institutions. It is not for us to entertain conjectures in opposition to the views of the state, and annul its regulations upon disputable considerations of their wisdom or necessity. Nor can we accommodate the regulations to the assertion of a special purpose by the applying student, varying, perhaps, with each one, and dependent alone upon his promise.

"This being our view of the power of the legislature, we do not enter upon a consideration of the elements of complainant's

contention. It is very trite to say that the right to pursue happiness and exercise rights and liberty are subject in some degree to the limitations of the law, and the condition upon which the state of Mississippi offers the complainant free instruction in its University, that while a student there he renounce affiliation with a society which the state considers inimical to discipline, finds no prohibition in the 14th Amendment." 35 S.Ct. 723.

We are referred by the complainant to the case of Meyer v. State of Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446, wherein a statute of the state of Nebraska, Laws 1919, c. 249, prohibiting the teaching, under the penalty of the commission of a misdemeanor, by any teacher in any school of that state, whether denominational, parochial, or public, of "any subject to any person in any language then [other than] the English language" was declared to be violative of the liberty protected by Amendment 14. The two cases involve entirely different situations. We are satisfied that the doctrine of the Meyer case may exist and be in absolutely no conflict with the doctrine of the Waugh case. The chronology of the two cases will support this, as the Waugh case was decided in 1915 and the Meyer case followed it in 1923. No mention of the Waugh case is made to reach the decision in the Meyer case.

We believe likewise that the holding under the same amendment by the United States Supreme Court in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628, 147 A.L.R. 674, that there was an invasion when school authorities compelled the flag salute and pledge, does no offense to the conclusion in this case, for in the West Virginia case there was not only an invasion into the sphere of intellect and spirit which it was the purpose of our first amendment to reserve from all official control, but likewise a collision with the guarantees under the fourteenth amendment.

Persuasively, in support of our conclusion in this case, we find that in many states of the Union, closely approaching, if not similar, conclusions have been made on the same question as we have here, to-wit: Lee v. Hoffman, 182 Iowa 1216, 166 N.W. 565, L.R.A. 1918C, 933; Bradford v. Board of Education of City and County of San Francisco, 18 Cal.App. 19, 121 P. 929; Steele v. Sexton, 253 Mich. 32, 234 N.W. 436.

In the following cases it was so well-settled that the local boards had the authority that no constitutional questions were raised or discussed: Wayland v. Hughes, 43 Wash. 441, 86 P. 642, 7 L.R.A.,N.S., 352; Wilson v. Board of Education of Chicago, 233 Ill. 464, 84 N.E. 697, 15 L.R.A., N.S., 1136, 13 Ann.Cas. 330; Favorite v. Board of Education of Chicago, 235 Ill. 314, 85 N.E. 402; Smith v. Board of Education of Oak Park & River Forest Township High School, 182 Ill.App. 342; Antell v. Stokes, 287 Mass. 103, 191 N.E. 407.

The motion to dismiss the suit of complainant because of the lack of jurisdiction based on the want of presentation of a federal question accordingly will have to be sustained and ensuingly the temporary restraining order previously issued will have to be recalled. Judgment will be signed in that tenor upon presentation.

After the final draft of this opinion, three other parents were allowed to intervene, to-wit: Messrs. Harris Frederic and Weyman H. Oden and Mrs. Tom S. Pittman. No new point, either of fact or of law, was urged; we discern none; accordingly, this opinion applies also to them.